**SISTRUNK, Edward, Appellant,**

**v.**

**Edmund LYONS and the Attorney General of the State of Pennsylvania and District Attorney of Phila. County.**

**No. 80–1649.**

United States Court of Appeals, Third Circuit.

Argued Nov. 7, 1980.

Decided March 31, 1981.

William James (argued), Louis Lipschitz, Philadelphia, Pa., for appellant.

Michael F. Henry, Chief, Motion Unit, Steven H. Goldblatt (argued), Deputy Dist. Atty., Edward G. Rendell, Dist. Atty., Philadelphia, Pa., for appellees.

Before ADAMS and SLOVITER, Circuit Judges, and BROTMAN * District Judge.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This appeal, by a state prisoner charged with first degree murder, presents two primary issues. First, does a federal court have jurisdiction over a petition for habeas corpus based on a challenge to excessive bail or the refusal to set bail? Second, how should a federal court deal with a prisoner's habeas corpus petition when it is not clear whether the highest state court imposed excessive bail or refused bail completely? [1]

### I.

Nine years ago, on October 22, 1971, Edward Sistrunk was convicted in the Court of Common Pleas of Philadelphia of first degree murder and eleven related offenses. The charges stemmed from a robbery by eight persons of Dubrow's Furniture Store. In the course of the robbery, one man was killed, five fires were ignited, and many persons were assaulted. Sistrunk received sentences of life imprisonment for murder, followed by consecutive and concurrent twenty to forty year sentences for the other crimes. On appeal, the Pennsylvania Supreme Court affirmed the judgment. *Commonwealth v. Sistrunk*, 460 Pa. 655, 334 A.2d 280 (1975).

Sistrunk then sought collateral relief pursuant to the Pennsylvania Post-Conviction Hearing Act.[2] On May 25, 1979 the Philadelphia Court of Common Pleas granted Sistrunk a new trial on the ground that his Sixth Amendment rights were abridged by prejudicial error in the prosecutor's closing argument and by ineffective assistance rendered by his counsel.

Following the award of a new trial, Sistrunk requested that bail be set pending his retrial. At the bail hearing, presided over by the same judge who had overturned the original convictions, Sistrunk stated that while awaiting retrial he intended to live with his mother in Philadelphia, that he had nine children who resided with his divorced wife in Philadelphia, and that the head of the Muslim Temple in Philadelphia had offered him a job. The court concluded that it

> ... has had an opportunity to weight (sic) the gravity of the crime, the mitigating and aggravating circumstances which are inherent in the transcript which this Court has read and which is a very important factor upon the likelihood of conviction and possible penalty. The Court has taken into consideration that which has been adduced by the defendant with respect to his marital status, his background as to criminal conduct over a period of time which apparently was abated by his present incarceration, because there were a series of convictions during a sustained period of time.

Bail was then set at two million dollars.[3]

Sistrunk next appealed the bail adjudication to the Pennsylvania Supreme Court, which denied the application for a bail reduction in a cryptic per curiam order that declared:

> It is the conclusion of the Supreme Court that this is a case where bail should be denied. In view thereof this petition is denied.

---

* Honorable Stanley S. Brotman, United States District Court for the District of New Jersey, sitting by designation.

1. The procedural maze through which motions to reduce state-set bail must wind before reaching a federal appellate court, combined with the practice of placing incarcerated defendants on an expedited trial calendar, generally moots most constitutional challenges brought to the federal courts objecting to excessive bail imposed at the state level. *See* Note, *Compelling Appearance in Court: Administration of Bail in Philadelphia*, 102 U.Pa.L.Rev. 1031, 1052 (1954)

(average incarcerated defendant tried one month after preliminary hearing; bailed defendant tried an average of nine months after preliminary hearing).

2. 19 Pa.Cons.Stat. § 1180–1 *et seq.*

3. Pennsylvania employs a ten percent bail system. Accordingly, Sistrunk would be required to deposit $200,000 cash, or the equivalent in realty or a combination thereof with the clerk of court in order to secure release. Pa.R. Crim.P. 4006(c), (e).

Appellant then filed for habeas corpus relief in the district court.[4] He alleged that the $2 million bail (1) contravened his Eighth and Fourteenth Amendment rights to reasonable bail, (2) abridged the presumption of innocence accorded all unconvicted persons, and (3) violated a policy of equal treatment, insofar as a co-defendant convicted of the same charges and also awarded a new trial had been released on $300,000 bail. The district court, adopting the report and recommendation of a United States Magistrate, denied relief without a hearing on the merits. It concluded that the state trial judge had not abused his discretion in setting bail nor set an arbitrary or discriminatory bail in violation of the Fourteenth Amendment. Further, the district court reasoned that, because Sistrunk could be subject to the death penalty on retrial, bail could have been denied in any event. This appeal ensued.

Because we conclude that the excessive bail provision of the Eighth Amendment is applicable to the states pursuant to the due process clause of the Fourteenth Amendment, but find it plausible that the State Supreme Court intended not to impose a $2 million bail but to deny bail altogether, we affirm the order of the district court without prejudice to petitioner to seek clarification from the state courts.

## II.

■ Our first concern is to determine whether this Court has jurisdiction to entertain the present proceeding. Federal courts have authority to consider habeas petitions of persons in state custody pursuant to 28 U.S.C. § 2254, "only on the ground that the applicant is in custody in violation of the Constitution or laws or treaties of the United States." § 2254(a). Accordingly, it is necessary to decide, as a threshold matter, whether the right to be free of excessive bail that is enshrined in the Eighth Amendment extends to an individual in state criminal proceedings. Unless the due process clause of the Fourteenth Amendment encompasses this Eighth Amendment provision, making it applicable to the states, Sistrunk has not presented a claim cognizable under § 2254.

During the years following World War II, the Supreme Court has attempted to sculpt the procedural content of the Fourteenth Amendment's due process clause. It has done so in theory by asking whether a particular right is fundamental to ordered liberty;[5] and it has done so in practice by incorporating specific guarantees of the Bill of Rights in the Fourteenth Amendment.[6] This judicial process of selective incorporation[7] of the values embodied in the clauses of the Bill of Rights through the Fourteenth Amendment has never directly resolved whether the Eighth Amendment prohibition of excessive bail is binding on state proceedings. The relatively short opinion of the Supreme Court in *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), which held that the state and federal governments were equally bound by the Eighth Amendment's companion clause against cruel and unusual punishment, found no occasion to address or to distinguish the Amendment's other provisions. But insofar as enforcement of the Eighth Amendment's cruel and unusual punishment clause against a state is bottomed on the presence of that prohibition in the Eng-

---

4. A petitioner appealing the imposition of bail by a state court must exhaust available state remedies before commencing a habeas proceeding in the federal district court. *See* 28 U.S.C. § 2254(b).

5. *See Palko v. Connecticut*, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937).

6. *See Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) (enumerating

Bill of Rights provisions held applicable to the states).

7. Scholars' reactions to the theory of selective incorporation have been varied. *See* Friendly, *The Bill of Rights as a Code of Criminal Procedure*, 53 Calif.L.Rev. 929 (1965); Henkin, *Selective Incorporation in the 14th Amendment*, 73 Yale L.J. 74 (1963); Kadish, *Methodology and Criteria in Due Process Adjudication—A Survey and Criticism*, 66 Yale L.J. 319 (1957).

lish Bill of Rights of 1689,[8] the excessive bail prohibition should be similarly enforced, for it too is enumerated in the ancient Bill of Rights.[9] Moreover, the Supreme Court has to a considerable extent foreshadowed its position on this important subject by stating in *Schilb v. Kuebel*, 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971), that "[b]ail, of course is basic to our system of law, (citing cases), and the Eighth Amendment's proscription of excessive bail has been assumed to have application to the states through the Fourteenth Amendment." *Id.* at 365, 92 S.Ct. at 484. The Supreme Court has recently noted that it continues to adhere to this assumption as a fundamental means for protecting against deprivations of liberty without due process of law. *See Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S.Ct. 2689, 2694 n.3, 61 L.Ed.2d 433, *id.* 149 n.1, 99 S.Ct. at 2697 n.1 (Stevens, J., dissenting) (1979).

Moreover, insofar as interrelated rights, similarly aimed at preventing unwarranted confinement of those not guilty, have been deemed constitutionally required at the state level it follows logically that freedom from excessive bail should be an essential element of due process. Thus, the Sixth Amendment right to a speedy trial, an alternative method for minimizing pretrial detention, has been declared to be a constitutional protection that both state and federal governments must observe. *See Klop-fer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). The Court has also held that proof of a criminal charge beyond a reasonable doubt—analogously a safeguard against unjust imprisonment of persons not guilty—is a constitutionally mandated element of due process as that clause has been applied to the states.[10] In parallel fashion, freedom from excessive bail forecloses unjustified detention of those not yet adjudicated guilty.[11]

There is a set of inquiries that the Supreme Court has developed for determining whether a right provided by the Bill of Rights with respect to federal criminal proceedings is also protected by the Fourteenth Amendment from state encroachment. As articulated in *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), the question is "whether a right is among those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions, . . . whether it is basic in our system of jurisprudence; . . . and whether it is a fundamental right, essential to a fair trial." *Id.* at 148–49, 88 S.Ct. at 1446–48. What a court faced with an incorporation question must ultimately decide is whether our society's historic and philosophic commitment to the particular clause in issue is sufficient to require that states, as well as the federal government, bear the responsibility for respecting that provision.

---

**8.** *See Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463, 67 S.Ct. 374, 376, 91 L.Ed. 422 (1947), *Furman v. Georgia*, 408 U.S. 238, 243, 92 S.Ct. 2726, 2728, 33 L.Ed.2d 346 (1972) (Douglas, J., concurring).

**9.** Bill of Rights, 1689, 1 Wm. & Mary Sess. 2, C. II, § I(10). *See* Foote, *The Coming Constitutional Crisis in Bail: I*, 113 U.Pa.L.Rev. 959, 965–68 (1965). Bail to avoid pretrial imprisonment was a central theme in the struggle to implement the Magna Carta promise of freedom from detention unless by the law of the land (Chapter 39). The Petition of Right in 1628, the Habeas Corpus Act of 1679 and the Bill of Rights of 1689 all sought to implement the right to bail.

**10.** *See In Re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970), where the Court stated that the reasonable doubt standard "provides concrete substance for the presumption of innocence—that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.'" *Id.* at 363, 90 S.Ct. at 1072.

**11.** It is necessary, however, to distinguish the presumption of innocence as an evidentiary rule which comes into operation at trial from the general presumption that one should not be deprived of liberty without due process of law. Bail of course functions to preserve the latter principle. *Cf. Hampton v. Holmesburg Prison Official*, 546 F.2d 1077, 1080 n.1 (3d Cir. 1976) (presumption of innocence is a principle of evidence, allocating burden of proof); 9 J. Wigmore, Evidence § 2511 (3d ed. 1940). For history of the presumption of innocence see *Coffin v. United States*, 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481 (1895).

The right to be free from excessive bail meets the first test set forth in *Duncan*. It belongs to those "fundamental principles of liberty and justice which lie at the base of our civil and political institutions." [12] Bail was a carefully guarded right in colonial America, and early legislation significantly expanded upon English bail law by replacing remnants of magistral discretion with a positive right to bail, except in capital cases.[13] The Eighth Amendment interdiction against excessive bail was immediately supplemented by a federal statutory right to bail in all non-capital cases.[14] The negative constitutional guarantee and the positive statutory provision combined to support a deep-rooted commitment to freedom before conviction. As described in *Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951), one of the few Supreme Court cases to address whether a certain bail sum was excessive under the Eighth Amendment, "the spirit of the procedure is to enable [persons] to stay out of jail until a trial has found them guilty." 342 U.S. at 8, 72 S.Ct. at 5 (opinion of Jackson, J.). The Supreme Court, in *Stack*, went on to assert that bail "permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction.... Un-

less this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." 342 U.S. at 4, 72 S.Ct. at 3.

Of course, the Eighth Amendment does not create an absolute right to be free on bail. Rather, it is the foundation of a bail system which, by conditioning release on the offer of financial security, seeks to reconcile the defendant's interest in, and society's commitment to, pretrial liberty with the need to assure the defendant's presence at trial. The Amendment, however, must be carefully guarded so as to prevent diminution of its protection by statutory elimination of the right to bail for various offenses.

The Eighth Amendment's bail clause also fulfills the second *Duncan* criterion inasmuch as it may be characterized as "basic to our system of jurisprudence." [15] Bail was a central theme in the struggle to implement the Magna Carta's 39th chapter which promised due process safeguards for all arrests and detentions. As one scholar noted, "it is significant that three of the most critical steps in this process—the Petition of Right in 1628, the Habeas Corpus Act of 1679, and the Bill of Rights of 1689—grew

---

**12.** *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), the case which originally propounded this test, further elaborated upon it. The Court stated that one should ascertain settled usages and procedures in English common and statutory law and then insure that the practices were followed by this country *after* nationhood to prove their suitability to our civil and political institutions.

It is possible that some of the personal rights safeguarded by the first eight Amendments against National action may also be safeguarded against state action, because a denial of them would be a denial of due process of law.... If this is so, it is not because those rights are enumerated in the first eight Amendments, but because they are of such a nature that they are included in the conception of due process of law." *Id.* at 67–68, 53 S.Ct. at 63–64, *quoting Twining v. New Jersey*, 211 U.S. 78, 99, 29 S.Ct. 14, 19, 53 L.Ed. 97 (1908).

**13.** This development began with the Massachusetts Body of Liberties in 1641, which provided in part:

No man's person shall be restrained or imprisoned by any Authority what so ever, before the Law hath sentenced him thereto, If he can put in sufficient securitie, bayle or mainprise, for his appearance, and good behavior in the meane time, unlesse it be Crimes Capital, and Comtempts in open Court, and in such cases where some expresse act of Court [*i.e.* legislature] doth allow it.

Pennsylvania created a similar protection in 1682, as did North Carolina in 1776, and a bail clause was widely adopted in various state constitutions promulgated in the 19th century. *See* Foote, *supra* note 9, at 975.

**14.** First Judiciary Act of 1789, 1 Stat. 73, 91.

**15.** This criterion is derived from *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), which focused on the traditional Anglo-American distrust for secret trials mostly as a reaction to their abuses in *other cultures*—the Spanish Inquisition and the French monarchy's use of the lettre de cachet, which ordered immediate imprisonment or exile without public trial.

out of cases which alleged abusive denial of freedom on bail pending trial." [16]

Not only was the excessive bail proviso embedded in the English Bill of Rights of 1689, it was set forth in many state constitutions adopted during the Revolutionary Period [17] and eventually converted into a constitutional command in the Eighth Amendment. By the nineteenth century it had been provided for in most state constitutions and was specifically buttressed by clauses affirmatively granting the right to bail conditioned on security in all noncapital cases. [18] Whereas many European countries either do not provide a bail system or rely on individualized discretion in the granting of bail, the Anglo-American right to be free from excessive bail is a basic component—both ancient and all-pervasive under federalism—of the criminal trial process in our adversary system. [19]

The third test specified in *Duncan* is whether the right is "essential to a fair trial" or whether it furthers the reliability of the guilt-determining process. This requires a more multifactored calculation than demanded by the other two criteria. The values represented and protected by bail must be measured against the social costs and the difficulties of administering a bail system. [20] The answer is not unequivocal. On the one hand, admission to bail enhances the adversary system by permitting an untrammeled preparation of the defense. As the Supreme Court has observed, "without this conditional privilege, even those wrongly accused are punished by a period of imprisonment while awaiting trial and are handicapped in consulting counsel, searching for evidence and witnesses, and preparing a defense." *Stack v. Boyle*, 342 U.S. at 7, 8, 72 S.Ct. at 4, 5 (opinion of Jackson, J.). On the other hand, if bail is not effective in preventing flight, the adversary system is harmed by the defendant's failure to appear at trial. Further, if a defendant interferes with or threatens witnesses prior to trial the fairness of the adjudicative process may be jeopardized. [21] Finally, insofar as the constitutional concern with bail focuses on the aspect of excessiveness, indigent defendants may be more harshly penalized by the system, thus undercutting a social commitment to equality. [22]

At the federal level, the Eighth Amendment and the Federal Rules of Criminal Procedure have resolved these conflicting interests in favor of admission to bail, and have accepted the possibility of flight as "a calculated risk which the law takes as the price of our system of justice." *Stack v. Boyle*, 342 U.S. 1, 8, 72 S.Ct. 1, 5, 96 L.Ed. 3 (opinion of Jackson, J.). Indeed, the Supreme Court has held that because the function of bail is limited to assuring a defendant's presence at trial, "[b]ail set at a

---

16. *See* Foote, *supra* note 9, at 966.

17. *See* Virginia Bill of Rights § 9 (1776) ("excessive bail ought not to be required"), *reprinted in* Documents of Am. History at 104 (3d ed. 1946) (ed. H. Commager); Massachusetts Bill of Rights art. XXVI (1790) ("no magistrate or court of law shall demand excessive bail or sureties"), *id.* at 109; Foote, *supra* note 9, at 982–89.

18. *See* Foote, *supra* note 9, at 969.

19. *See* Foote, *supra* note 9, at 963.

20. *Cf.* Nowak, *Foreword—Due Process Methodology in the Postincorporation World*, 70 J.Crim.L. & Criminology 397 (1979) (suggesting *Eldridge*—like test balancing individual interests and state interests to determine contents of due process in criminal proceedings).

21. Within the federal system trial courts have the inherent power to revoke bail during the trial if necessary to insure orderly trial processes. *Fernandez v. United States*, 81 S.Ct. 642, 5 L.Ed.2d 683 (1961) (Harlan, Circuit J.). This power to preserve the integrity of the court's processes may extend to custody in advance of trial in extreme or unusual cases. *Carbo v. United States*, 82 S.Ct. 662, 7 L.Ed.2d 769 (1962) (Douglas, Circuit J.).

22. *See* Bail Reform Act of 1966, 18 U.S.C. § 3146 (1976). The Bail Reform Act, in the federal context, favors a policy of release pending trial on personal recognizance or upon the execution of an unsecured appearance bond, rather than the more drastic alternative of a bail bond. Thus, a start has been made to deal equitably with indigents. Pennsylvania provides for release on recognizance or nominal bail only when the maximum sentence could not exceed three years. Pa.R.Crim.P. 4004.

figure higher than an amount reasonably calculated to fulfill this purpose is 'excessive' under the Eighth Amendment." 342 U.S. at 5, 72 S.Ct. at 3.[23] In light of the earlier analysis, it is clear that bail constitutes a fundament of liberty underpinning our criminal proceedings. Historically, it has been regarded as elemental to the American system of jurisprudence. Consequently, it would be difficult to justify why state institutions should not similarly be required to respect that practice. Our criminal system has made a basic choice: crimes are to be deterred by the threat of subsequent punishment, not by prior confinement. States should not be permitted to undermine this judgment by substituting pretrial detention in the guise of excessive bail for the existing criminal system which favors freedom prior to conviction.[24]

Moreover, enforcing the Bail Clause against the states as an element of due process need not limit state administration of bail to a procrustean, federal mold—a concern expressed by many opposed to an extensive use of the incorporation doctrine. Unlike most guarantees in the Bill of Rights, it is not the naked right to bail with which we deal, rather it is the right to be free from *excessive* bail. While federal law is determinative on the issue of "excessiveness," federal bail statutes would appear to provide only guidance on the exact contours of the right to bail.[25] States remain free within constitutional bounds to define the range of offenses for which bail is discretionary.[26] Because the Eighth Amendment does not delimit the denial of bail to capital offenses, Congress as well as the states could provide that other serious noncapital crimes are similarly not entitled to bail—subject, of course, to due process constraints.[27] And the Supreme Court has admitted a reluctance to involve itself in each

**23.** Moreover, this reasoning logically leads to the conclusion that bail may not be arbitrarily denied, for excessive bail is, in effect, a denial of bail. The constitutional right to be free from excessive bail thus shades into a protection against a denial of bail.

**24.** *See* Note, *Preventive Detention Before Trial*, 79 Harv.L.Rev. 1489, 1503 (1966) (arguing that bail may be refused in order to protect the integrity of the legal system, e.g., when a defendant might flee, or intimidate witnesses, but that bail may not be refused in order to prevent dangerous acts, for that would displace the established legal method for prohibiting the commission of crimes).

**25.** We realize that since *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), the Supreme Court has incorporated not merely the "core" of a particular right, but has applied all the ancillary rules and specific details developed in federal judicial interpretations to state proceedings. While some have charged that this practice produces a warped construction and possible dilution of constitutional rights, *see Williams v. Florida*, 399 U.S. 78, 117–38, 90 S.Ct. 1893, 1914–26, 26 L.Ed.2d 446 (1970) (Harlan, J., dissenting), such a danger would appear to be minimal in the instance of bail where it is not the right but simply the ceiling on the amount that is subject to constitutional delineation.

Therefore, should the Supreme Court constitutionalize the federal statutory rule, addressed in *Stack*, of a right to bail in all noncapital cases, states would retain some discretion in defining certain offenses as capital. *Simply* from a practical standpoint what federal law has categorized as a nonbailable offense—often purely federal statutory crimes—could not be imposed directly onto state systems composed of different, usually common law, offenses.

**26.** For example, in the wake of the death penalty decision of the Supreme Court in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), it was suggested that states could continue to deny bail for serious offenses which had previously been subject to punishment by death. *See People v. Anderson*, 6 Cal.3d 628, 100 Cal.Rptr. 152, 493 P.2d 880 (1972). Inasmuch as the number of capital offenses has diminished markedly since the 18th and early 19th centuries, when many bail provisions were first drafted, it may be argued that states should redefine generally the crimes for which bail is discretionary. It would appear that the large number of crimes defined as capital originally succeeded in protecting the public relatively effectively from dangerous persons. Should a rethinking of the purposes of bail suggest that protection of the community from harm were a permissible goal of bail, it could be argued that other than capital offenses might be categorized as nonbailable.

**27.** *See United States ex rel. Covington v. Coparo*, 297 F.Supp. 203 (S.D.N.Y.1969) (Fifth Amendment is independent limit on congressional power to define class of offenses not entitled to bail).

detail of a state's bail system.[28] Therefore, the fear that states would be rigidly and needlessly cabined by a uniform federal code,[29] or that federal rights would be diluted in the course of accommodating them to a multiplicity of state interests,[30] does not appear to be as valid in the unique context of excessive bail. For the Constitution does not provide a right to bail *per se* to which the states must conform, it only sets a ceiling on its employment.

Finally, there would appear to be no reason for not holding that the Eighth Amendment's excessive bail provision is binding on the states. It would be difficult to argue against such an incorporation simply on the ground that the concept of excessiveness, a somewhat vague and subjective notion, would encourage unprincipled intrusions by the federal judiciary into the state systems. For other, equally unbounded terms—such as unreasonable searches and seizures, cruel and unusual punishment—have been held enforceable against the states. In contrast, the right to indictment only by a grand jury, one of the most concrete and specific provisions of the Bill of Rights, has not been held enforceable against the states. Thus it would appear that a court's need to resort to subjective rather than objective judgment does not determine whether a particular clause in the Bill of Rights will be held binding on the states.

Because the Bail Clause is integral to our concept of ordered liberty and because its application to the states would not drain bail administration of the flexibility that is vital to the continued development of due process, we hold that the excessive bail provision is binding on the states. We there-fore have jurisdiction to entertain petitioner's complaint.

### III.

Sistrunk attacked his bail as unreasonable on three interrelated grounds. He claimed that (1) it abridged the presumption of innocence; (2) it was discriminatory; and (3) it was excessive in violation of the Eighth Amendment.

#### a.

■ In the wake of *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), it would appear that pretrial detainees can no longer predicate constitutional challenges on the presumption of innocence. For there the Court stated that despite the important role the presumption of innocence plays in the criminal justice system, "it has no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun." 441 U.S. at 533, 99 S.Ct. at 1870. Indeed, as Justice Frankfurter had previously commented, "[i]f the 'presumption of innocence' is read literally to apply to all pretrial procedures, it is impossible to justify bail or pretrial detention, both of which are restraints imposed upon an accused despite the presumption." *Leland v. Oregon*, 343 U.S. 790, 802–03, 72 S.Ct. 1002, 1009–10, 96 L.Ed. 1302 (1952) (Frankfurter, J., dissenting). While Justice Frankfurter's insight does not dilute the earlier observation that release on bail operates in support of the presumption of innocence principle, see n.10 *supra*, it does indicate that the principle itself is not a source of substantive rights and does not provide adequate footing for a habeas petition.

---

**28.** As the Supreme Court stated in *Schilb v. Kuebel,* in which it assumed the applicability of the Eighth Amendment to the states, but noted that the sole concern in that case was the 1% cost-retention provision of Illinois' bail system: "[T]his smacks of administrative detail and of procedure and is hardly to be classified as a 'fundamental' right or as based upon any suspect criterion." 404 U.S. 357, 365, 92 S.Ct. 479, 484, 30 L.Ed.2d 502 (1971).

**29.** *See* Friendly, *supra* note 7.

**30.** *See Williams v. Florida,* 399 U.S. 78, 117–38, 90 S.Ct. 1893, 1914–26, 26 L.Ed.2d 446 (1970) (Harlan, J., dissenting) (criticizing incorporation doctrine as responsible for abandonment of historically observed 12-member jury guarantee and forecasting leveling tendency in order to accommodate divergent state and federal practices).

### b.

■ Sistrunk's claim of discriminatory bail treatment, which relies on a co-defendant's admission to bail at $300,000, at least on the limited evidence before us, also lacks constitutional dimensions. As the Supreme Court has emphasized, bail, although generally applicable, is an individualized determination. "Even on a conspiracy charge defendants do not lose their separateness or identity.... The question when application for bail is made relates to each one's trustworthiness to appear for trial and what security will supply reasonable assurance of his appearance." *Stack v. Boyle*, 342 U.S. 1, 9, 72 S.Ct. 1, 5, 96 L.Ed. 3 (1951) (opinion of Jackson, J.). The mere fact that one co-defendant had bail set at $300,000 while another co-defendant was refused bail or had his bail set at six times that amount is, without more, insufficient evidence to establish a discrimination. Yet that is all that the record discloses on this point.

### c.

■ The third argument advanced by Sistrunk in support of his habeas petition is that the $2 million bail imposed by the trial judge violated the Eighth Amendment prohibition on excessiveness. Since the Supreme Court has defined bail as excessive when set at a figure higher than an amount reasonably calculated to fulfill the purpose of assuring defendant's presence at trial,[31] Sistrunk contends that the setting of a $2 million bail, in the absence of further explanation, is excessive.

### IV.

Inasmuch as federal-state comity concerns exist whenever a habeas petition places the effectuation of constitutional rights in question, we must exercise caution in encroaching on this area unless there is some degree of certainty that a federal constitutional right has been transgressed.

The difficulty with the petition before us arises from the apparent ambiguities in the state court adjudications of the bail motion. Although Sistrunk confronts this Court with a constitutional issue of excessiveness, there are three possible readings of the ultimate state court disposition. The Common Pleas Court stated that "defendant does have the right to bail" and proceeded to set bail at $2 million. In contrast, the Pennsylvania Supreme Court declared that "this is a case where bail should be denied," but arguably—although *sub silentio*—appeared to allow the $2 million bail to stand. In tracing the intersection of these two superficially inconsistent statements we could conclude that the state intended to deny bail altogether; that it considered the $2 million not to be excessive inasmuch as bail could have been denied; or that $2 million was simply not excessive in the circumstances present here.

The first interpretation—that the state intended to deny bail—insofar as it relies on state constitutional law, which permits pretrial detention in capital cases,[32] provides an adequate and independent state ground for the denial of bail and obviates the need for further federal court review.[33] Although such a construction would represent a change in the extent of protection the state constitutional provision has traditionally

---

31. *Stack v. Boyle*, 342 U.S. 1, 5, 72 S.Ct. 1, 3, 96 L.Ed. 3 (1951). Existing constitutional law does not sanction excessive bail as a method for preventing the commission of future crimes or for preventing the interference with witnesses and investigations. Federal courts have held that an inherent power to deny bail exists, even at the pretrial stage, if it is determined after a hearing that release of the accused might result in threats to witnesses or unlawful interference with the criminal prosecution, *United States v. Wind*, 527 F.2d 672 (6th Cir. 1975); *United States v. Gilbert*, 425 F.2d 490 (D.C.Cir.1969). *See also* n.21 *supra*.

32. Pa.Const. Art. 1, § 14. If Sistrunk could have the death penalty inflicted upon him he would have no right to bail under the Pennsylvania Constitution, although he could be admitted to bail at the discretion of the court.

33. *See also Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976).

been held to afford to defendants on retrial,[34] this is a question of Pennsylvania law and not within the province of a federal habeas court to re-examine.[35] More importantly, the Constitution presents no impediment to such a choice by Pennsylvania. In fact, it would be in accordance with more recent federal constitutional law which permits more severe punishments on retrial—the necessary predicate for a determination of nonbailability in the present case. See *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Chaffin v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973).[36]

While we are fully cognizant of the independent review role of the federal courts when a petition for habeas is filed,[37] we see no reason to disrupt the state criminal system needlessly if a plausible reading can be placed on state proceedings. Moreover, in countenancing the interpretation which offers an independent state ground, we avert the admittedly difficult task, one of first impression for this Court, of resolving the constitutional question of excessiveness.

If Sistrunk believed that the Pennsylvania Supreme Court had done other than to deny bail completely, he was free to file a motion for clarification. Not having done so, he cannot now expect the federal courts to indulge the possibility that the order of the State Supreme Court meant other than

that bail was denied—an order which in the present context would not abridge Sistrunk's federal constitutional rights under the Eighth Amendment.

### V.

Under these circumstances, we cannot say that the district court erred in dismissing the petition for habeas corpus. Accordingly, the order of the district court will be affirmed.[38]

SLOVITER, Circuit Judge, concurring.

I concur in the holding that the Eighth Amendment's prohibition of excessive bail is applicable to the states and that the application for a writ of habeas corpus was properly denied because, *inter alia,* the Pennsylvania courts could constitutionally decide the defendant had no right to bail.

---

**34.** While prior opinions of the Pennsylvania Supreme Court indicate that once a defendant has had a non-capital penalty imposed, the state may not impose a capital penalty on a retrial, the last Pennsylvania case to deal definitively with the question whether double jeopardy bars increased punishment upon reconviction, was decided before *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) and *Chaffin v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973), which held that more severe penalties on retrial did not violate double jeopardy. *See Commonwealth v. Littlejohn,* 433 Pa. 336, 250 A.2d 811 (1969).

**35.** *See Rose v. Hodges,* 423 U.S. 19, 22, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975).

**36.** We note that the Supreme Court is presently considering *Bullington v. Missouri,* 594 S.W.2d 908 *cert. granted,* —— U.S. ——, 101 S.Ct. 70,

66 L.Ed.2d 21 (1980), which asks for reconsideration of whether the Double Jeopardy Clause permits a state to seek the death penalty at defendant's second trial after the jury at his first trial declined to return a verdict of death.

**37.** *See* 28 U.S.C. § 2254; *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Brown v. Allen,* 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953).

**38.** This holding is without prejudice to Sistrunk to file appropriate motions in the state court to determine whether, instead of denying bail completely, the Supreme Court merely affirmed bail in the amount of $2 million, and then to return to the federal court if an excessive bail situation is thereby disclosed.