ROSE, WARDEN *v.* HODGES ET AL.

No. 75–139.   Decided November 11, 1975

PER CURIAM.

Respondents Hodges and Lewis were convicted of committing murder in the perpetration of a rape in Memphis,

Tenn., and sentenced to death by electrocution. On July 31, 1972, the Tennessee Court of Criminal Appeals affirmed the judgments of conviction but reversed and remanded the record to the trial court on the issue of punishment, declaring that "[t]he Supreme Court of the United States has decreed that the death sentence is contrary to the Eighth Amendment . . . ." *Hodges* v. *State,* 491 S. W. 2d 624, 628 (1972).

On August 7, 1972, the Governor of Tennessee commuted respondents' death sentences to 99 years' imprisonment. On August 8, 1972, the State (represented by petitioner here) filed a timely petition for rehearing in the Court of Criminal Appeals pursuant to Tenn. Code Ann. § 16–451 (Supp. 1974), which provides that such a petition must be filed within 15 days of the entry of the judgment.

The Court of Criminal Appeals then found the commutations by the Governor to be "valid and a proper exercise of executive authority," citing *Bowen* v. *State,* 488 S. W. 2d 373 (Tenn. 1972), and held its remand "for naught," thus affirming the convictions and the sentences, as modified, in full, 491 S. W. 2d, at 629. On March 5, 1973, the Supreme Court of Tennessee denied certiorari.

Respondents Hodges and Lewis then petitioned for habeas corpus in the Federal District Court asserting, *inter alia,* that their Fourteenth Amendment rights were violated by the illegal commutation of their sentences. The case was transferred to the Federal District Court for the Western District of Tennessee, which dismissed as to this issue for failure to exhaust state remedies. Respondents appealed to the United States Court of Appeals for the Sixth Circuit.

In a brief order, that court held that since the death sentences had been vacated at the time of the Governor's

commutation order, "there were . . . no viable death sentences to commute" and therefore declared the commutations invalid.[1]

Upon reconsideration, the court noted that the judgment of the Court of Criminal Appeals vacating the death penalties had been timely modified by that court to comply with the commutation order. However, it did not alter its earlier decision, except to note that respondents had exhausted their state remedies as to this point.[2]

A necessary predicate for the granting of federal habeas relief to respondents is a determination by the federal court that their custody violates the Constitution, laws, or treaties of the United States, 28 U. S. C. § 2241; *Townsend* v. *Sain,* 372 U. S. 293, 312 (1963). The one sentence in the opinion of the Court of Appeals dealing with the invalidity of the Governor's commutations contains no reference to any provision of the Constitution, laws, or treaties of the United States or to any decision of this Court or any other court.[3] Whether or not the sentences imposed upon respondents were sub-

---

[1] This order would have returned respondents to the trial court for resentencing to between 20 years and life as a jury might determine. Tenn. Code Ann. § 39-2405 (1956).

[2] The dissent would have us probe beneath the surface of the opinions below in search of a logical foundation. In cases where the holding of the court below is unclear, such a technique may be required. Here, however, that court clearly "hold[s] the purported commutation . . . invalid." In its second opinion it reversed the District Court on the exhaustion question and otherwise specifically reaffirmed the earlier order. We are forced to take the Court of Appeals at its word.

[3] Two other panels of the same court have correctly recognized, in cases virtually identical to this one, that no federal constitutional question was presented by such a commutation. *Smith* v. *Rose,* No. 74-1753 (Nov. 15, 1974); *Bowen* v. *Rose,* No. 74-1087 (Mar. 19, 1974).

ject to commutation by the Governor, and the extent of his authority under the circumstances of this case, are questions of Tennessee law which were resolved in favor of sustaining the action of the Governor by the Tennessee Court of Criminal Appeals in *Hodges* v. *State, supra.* It was not the province of a federal habeas court to re-examine these questions.

Respondents urge, in support of the result reached by the Court of Appeals for the Sixth Circuit, that their Fourteenth and Sixth Amendment rights to jury trial have been infringed by the Tennessee proceedings. We reject these contentions. A jury had already determined their guilt and sentenced them to death. The Governor commuted these sentences to a term of 99 years after this Court's decision in *Furman* v. *Georgia,* 408 U. S. 238 (1972). Neither *Furman* nor any other holding of this Court requires that following such a commutation the defendant shall be entitled to have his sentence determined anew by a jury. If Tennessee chooses to allow the Governor to reduce a death penalty to a term of years without resort to further judicial proceedings, the United States Constitution affords no impediment to that choice. *Dreyer* v. *Illinois,* 187 U. S. 71 (1902). Cf. *Schick* v. *Reed,* 419 U. S. 256 (1974).

The motion of the respondents for leave to proceed *in forma pauperis* and the petition for certiorari are granted, and the judgment of the Court of Appeals is

*Reversed.*

MR. JUSTICE DOUGLAS would deny certiorari.

MR. JUSTICE BRENNAN, with whom MR. JUSTICE MARSHALL joins, dissenting.

I dissent on two grounds: *first,* because the Court errs in reading the record to include a final holding of the Court of Appeals declaring the commutations to be in-

valid; and, *second,* because if there were such a final hold-
ing, summary disposition of the question of the validity
of the commutations—certainly one of first impression in
this Court—is particularly inappropriate.[1]

That the "commutations" have not been finally declared
invalid clearly emerges from the record of the proceed-
ings in the District Court and in the Court of Appeals.
The petition for habeas corpus alleged five errors by the
state courts.    Three (coerced confessions, prejudicial
comments during *voir dire,* Hodge's claim under *Bruton*
v. *United States,* 391 U. S. 123 (1968)) attacked respond-
ents' convictions, the other two the sentences (invalid
jury sentence and unconstitutional commutations).    The
District Court held that respondents had failed to ex-
haust state remedies on all of these issues except the
alleged invalidity of the jury sentence; accordingly, the
District Court issued a show-cause order "solely on the
issue that the jury allegedly failed to specify the degree
of murder in the verdicts." *Hodges* v. *Rose,* No. C–73–
442 (WD Tenn., Nov. 15, 1973).    The State accord-
ingly filed an answer dealing only with this issue, and
the District Court decided only that issue, rejecting
respondents' claim on the merits.    This question was
therefore the only claim that was ripe for appeal; spe-
cifically, there was no decision of the District Court on
the constitutionality of the commutations that was or
could have been the subject of respondents' appeal to
the Court of Appeals.[2]

---

[1] Neither of the decisions cited by the Court is apposite. *Dreyer*
v. *Illinois,* 187 U. S. 71 (1902), held merely that the Due Process
Clause of the Fourteenth Amendment does not bar executive exer-
cise of sentencing powers. *Id.,* at 84. *Schick* v. *Reed,* 419 U. S.
256 (1974), where the President reduced petitioner's death penalty
to life imprisonment, was not a case where the death sentence had
been judicially voided when the President acted.

[2] The cases cited by the Court in which panels in the Sixth Cir-

Nevertheless, it is of course true that the initial opinion of the Sixth Circuit contains the following language:

> "[The] commutation followed by some eight days an order of the Tennessee Court of Criminal Appeals vacating the order imposing the death penalty and remanding the case to the trial court for punishment determination in the light of *Furman v. Georgia,* 408 U. S. 238 [(1972)], *and for the reason that there were therefore no viable death sentences to commute, we hold the purported commutation and the concomitant imposition of committed [sic] sentences for terms of 99 years invalid."* *Hodges* v. *Rose,* No. 74–1461 (CA6, Feb. 25, 1975). (Emphasis added.)

The same opinion goes on to affirm the decision on the merits of the only question decided by the District Court, namely, the jury-sentence issue, and then observes that the State had confessed error on the exhaustion point. Accordingly, the judgment was "for further proceedings consistent herewith." This necessarily must have meant that the three constitutional attacks on the convictions

cuit have upheld similar commutations in other cases, *ante,* at 21 n. 3, serve to substantiate my reading of the record. Judge Miller was a member of the panel in *Smith* v. *Rose,* No. 74–1753 (CA6, Nov. 15, 1974), and Judge Peck participated in *Bowen* v. *Rose,* No. 74–1087 (CA6, Mar. 19, 1974). Both judges were also on the panel in the instant case, and the alleged inconsistency among the panel decisions was noted in the State's petition for rehearing. The Court's implicit suggestion that these federal judges issued conflicting decisions, without explanation, indicates the inaccuracy of the Court's view of the record.

Moreover, neither of the cited unpublished panel opinions explicitly states that the commutation being upheld was issued after a death sentence had been judicially voided. Parenthetically, the Sixth Circuit's Rule 11 prohibits citation of unpublished opinions. Am I to understand that this Court is not called upon to respect that prohibition?

should be addressed on the merits by the District Court. The *sua sponte* comments on the commutations thus made no sense since that issue would never arise if the convictions were set aside on any of the three grounds.

Not surprisingly, therefore, the State sought rehearing. The State dispositively argued, *first,* that the Sixth Circuit was precluded from addressing the commutation issue since the District Court had carefully confined its decision on the merits to the validity of the jury sentence.   The State argued, *second,* that there had been no opportunity to argue the commutation question in the District Court and that no record had been made on the issue, and, *third,* the commutation issue had not been briefed in the Sixth Circuit.   *Fourth,* and finally, the State argued—what surely must have been crystal clear—that the commutation question would never be reached if respondents prevailed on their challenge to the validity of their convictions.   True, as a good lawyer's would, the State's petition for rehearing challenged in any event the soundness of the statement that the commutations were invalid.   But the relief sought on rehearing was excision of the language quoted above and remand "to the District Court for consideration of all issues."

The Court of Appeals obviously recognized its error. The opinion on rehearing, while not deleting the whole statement, did delete the language emphasized above and left only the factual statement of what had occurred:

> "[The] commutation followed by some eight days an order by the Tennessee Court of Criminal Appeals vacating the [order imposing the] death penalty and remanding the case [to the trial court] for punishment determination in the light of *Furman* v. *Georgia,* 408 U. S. 238 [(1972)]." *Hodges* v. *Rose,* No. 74–1461 (CA6, June 10, 1975).

Significantly the opinion on rehearing also squarely held

that the District Court had erred in finding a failure to exhaust as to the commutation issue.

On this record, therefore, the only proper disposition is denial of the petition for certiorari. At the least, we should vacate and remand to the Sixth Circuit for clarification of whether the validity of the commutations was addressed and decided.

In any event, summary disposition of the issue of the validity of the commutations is strikingly inappropriate. There is no record in the lower courts on the commutation issue, because the District Court limited the habeas proceeding to the validity of the jury sentence. More importantly, the issue is one of first impression in this Court, and it surely merits briefing and oral argument. For example, I find troublesome the question whether (since there existed no viable death sentences to commute) the Governor's action should be treated as imposing the 99-year sentences without affording respondents constitutionally secured safeguards required when sentences are imposed. If the Governor had not acted, resentencing would have been by a jury at a proceeding highlighted by the usual safeguards, none of which applied to the Governor's action. The question is plainly not insubstantial; in *Mempa* v. *Rhay,* 389 U. S. 128 (1967), we held that constitutional safeguards (there the right to counsel) applied to the sentencing stage. Was the commutation in this case actually the sentencing stage since no death sentence existed to commute when the Governor acted? Also, the due process dimensions of the right to present evidence relevant to sentencing was left open in *McGautha* v. *California,* 402 U. S. 183, 218–220 (1971). If respondents were "sentenced" by the Governor, were they denied due process when not afforded that opportunity, even assuming that the Federal Constitution permits States to adopt executive in preference to

judicial sentencing? I agree that the Constitution allows Tennessee to empower the Governor to reduce a death penalty to a term of years without resort to judicial proceedings. But the Court's disposition assumes, without any in-depth analysis, that the instant case involves such "commutations" despite the fact that respondents' death sentences were voided and were therefore nonexistent when the Governor acted.

I would deny the petition for certiorari on my view that there is no holding of the Court of Appeals regarding the commutations to be reviewed. In any event, rather than disposing of the case summarily, the Court should grant the petition and set the case for oral argument.