Richard L. SHORT, Appellant,

v.

Samuel P. GARRISON; Attorney General of North Carolina, Rufus Edmisten, Appellees.

No. 81–7011.

United States Court of Appeals, Fourth Circuit.

Argued May 4, 1982.

Decided June 1, 1982.

---

George K. Walker, Wake Forest University School of Law, Williamsburg, Va., Robin Cutson and Don Fox, Third Year Law Students, for appellant.

Richard N. League, Sp. Deputy Atty. Gen., Raleigh, N. C. (Rufus L. Edmisten, Atty. Gen. of North Carolina, Raleigh, N. C., on brief), for appellees.

Before RUSSELL, WIDENER and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

Richard L. Short seeks review from the denial of a petition for a writ of habeas corpus. The district court adopted a Magistrate's Findings and Recommendation and ordered the petition dismissed.

On February 26, 1968 Short was indicted by a Forsyth County, North Carolina Superior Court grand jury for murder. On June 23, 1968, Short pleaded guilty to a charge of second degree murder in Superior Court and received a term of twenty-five years. At the time of his plea, Short was sixteen years old.

Although Short has brought a number of post-conviction actions in state court, the relevant one concerns the denial of relief in 1979. In that petition, Short alleged that the trial judge committed error by failing to make a "no-benefit" finding as required by the North Carolina Youthful Offender statute in effect at the time of his convic-

tion. *See* N.C.Gen.Stat. § 148–49.1 *et seq.*[1] The Superior Court denied the post-conviction relief even though it found Short was sixteen years old at the time of sentencing and that no explicit no-benefit finding was made at the time of sentencing. The court's reason for refusing relief ran:

> [Although] the appellate courts, upon proper motion, have vacated such judgment[s] and remanded [such] case[s] for further proceedings and for resentencing . . . all of the decisions have required such proceedings *only* in the case of an offender who was still less than twenty-one (21) years of age at the time of remand. In this case, it would serve no useful purpose and would defeat the intent of the youthful offender statutes . . . to resentence a person of [Short's] present age, approximately twenty-six (26) years, to a "Committed Youthful Offender" status.

Short petitioned for a writ of certiorari to the North Carolina Court of Appeals to contest the refusal of the Superior Court to grant resentencing. The Court of Appeals denied the writ.

If the original sentencing court had sentenced Short as a committed youthful offender, he would have been entitled to a conditional release in no more than four years. Since Short has served over thirteen years of his sentence, if resentencing were ordered and if the court *nunc pro tunc* conferred on Short committed youthful offender status, he would be entitled to immediate release.

The Magistrate in his Findings and Recommendation decided that there was some merit in the state's contention that the petition had been unduly delayed in its making and that Short, now over the age for being considered as a youthful offender, had contributed to a situation in which he was no longer able to receive a fair hearing on the matter. As a second ground for denying relief the Magistrate observed that, since

1. In *State v. Mitchell*, 24 N.C.App. 484, 487, 211 S.E.2d 645, 647 (1975), the court succinctly discussed the salient aspects of the statutory scheme in effect when Short was originally sentenced:

    > Article 3A, Chapter 148 of the General Statutes, (G.S. §§ 148–49.1 through 148–49.9) entitled "Facilities and Programs for Youthful Offenders" defines a "youthful offender" as a person under the age of twenty-one and a "committed youthful offender" as one sentenced under the Article. The purpose of the Article, stated in G.S. § 148–49.1, is to separate the youth from other and more experienced criminals, to provide a better method for treating youthful offenders, and to rehabilitate and successfully return them to the community.
    >
    > To accomplish this purpose, the trial judge was given the sentencing option of committing the youthful offender to the custody of the Secretary of Correction for treatment and supervision, fixing a maximum term. G.S. § 148–49.4. The "committed youthful offender" so sentenced receives special treatment in that he is to have a diagnostic and classification study, (G.S. § 148–49.5); is to be placed in special facilities and given vocational, educational, and correctional training, (G.S. § 148–49.7); is to be conditionally re-

    leased in the discretion of the Secretary and Parole Commission, (G.S. § 148–49.8(a)); and must be conditionally released within four years, (G.S. § 148–49.8(b)).

    *Mitchell* held that the last sentence of G.S. § 148–49.4 ("If the court shall find that the youthful offender will not derive benefit from treatment and supervision pursuant to this Article, then the court may sentence the youthful offender under any other applicable penalty provision.") *evinced a clear legislative intent* that, when sentencing a youthful offender, the trial judge must make a "no-benefit" finding or some other finding which clearly indicates that he considered the committed youthful offender option and decided that the defendant would not derive any benefit from that sentencing alternative. *Mitchell* was the first case to require such express findings. The parties agree that such a finding was not made in Short's case.

    Article 3A was repealed by Session Laws 1977, c. 732, s.1. A revamped version of the statute was enacted (Article 3B). *See* N.C.Gen. Stat. § 148–49.10 *et seq.* The revised Youthful Offenders Act provided that "All rights accrued by persons prior to October 1, 1977, shall not be affected." *Id.* § 148–49.11. Thus, Short's case is governed by the previous statute, Article 3A.

the North Carolina state courts had directly ruled that Short was not entitled to resentencing as a result of his age, federal review was foreclosed by *Rose v. Hodges,* 423 U.S. 19, 96 S.Ct. 175, 46 L.Ed.2d 162 (1975). As an independent reason, the Magistrate found that the relief should be denied because Short's claim was not a matter of constitutional dimension. Citing this court's decision in *Hailey v. Dorsey,* 580 F.2d 112 (4th Cir. 1978), *cert. denied,* 440 U.S. 937, 99 S.Ct. 1282, 59 L.Ed.2d 495 (1979), the Magistrate noted that it stood for the proposition that "errors in state procedural law may not be reviewed in this Court unless the result shows that the state court lacked jurisdiction to impose the sentence, or else the error constituted a fundamental defect which inherently results in the miscarriage of justice." The Magistrate thought it obvious that the lack of a no-benefit finding, even though it amounted to error, did not deprive the state courts of jurisdiction. Furthermore, he found that the omitted finding did not constitute a fundamental defect under the particular circumstances of the case.

On appeal, Short generally attacks the denial of the writ by the district court asserting, among other things, that the failure of the state to require resentencing violated his constitutional rights of equal protection and due process. Finding no error of constitutional magnitude, we affirm.

■ As for Short's due process claims, Short first argues that *In re Gault,* 387 U.S. 1, 58, 87 S.Ct. 1428, 1459, 18 L.Ed.2d 527 (1967) strongly intimated that a Juvenile Judge must "state the grounds for his con-clusion" that a child is delinquent. In that case, the Supreme Court in dicta stated:

[In *Kent v. United States,* 383 U.S. 541, 561 [86 S.Ct. 1045, 1057, 16 L.Ed.2d 84] (1966) ], we said, in the context of a decision of the juvenile court waiving jurisdiction to the adult court, which by local law, was permissible: "... it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons or considerations therefor."

*Id.* However, the Court in *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), made it clear that, under the statutory scheme, the transfer of a child from the protective mechanisms in Juvenile Court to the criminal processes of the District Court was "critically important." *Id.* at 560, 86 S.Ct. at 1056. The statute vested exclusive jurisdiction in the Juvenile Court unless the Juvenile Court waived its jurisdiction. The Court held, *inter alia,* that the statute and due process clause together required a statement of reasons for the Juvenile Court's decision to waive its jurisdiction. Since the present case does not present a question of the *jurisdiction* of the North Carolina courts, the cases cited by Short are inapposite.[2]

■ Short also asserts a general right of rehabilitative treatment in the juvenile reform process claiming that the right derives from the due process clause and the constitutional prohibition of cruel and unusual punishment. *See Nelson v. Heyne,* 491 F.2d 352, 358–60 (7th Cir. 1974), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974). Although we express no opinion as to whether such a constitutional right exists,[3] Short can point to no authority that

---

**2.** Short's reliance on *Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967) is also misplaced. In that case, the Court held that, under due process, a full-blown hearing must be held before Colorado's Sex Offenders Act could be invoked. The invocation of the Act, however, was interpreted by the Court as "the making of a *new charge* leading to criminal punishment." *Id.* at 610, 87 S.Ct. at 1212

(emphasis added). In the case at bar, the determination of "benefit" relates solely to punishment and can in no way be considered akin to a "new charge."

**3.** *See L. H. v. Jamieson,* 643 F.2d 1351, 1356 n.3 (9th Cir. 1981) (Right to treatment presents "a substantial and difficult question.").

such a right can be invoked at a time when the person is no longer a juvenile. Thus, we find no merit to any of the due process claims Short raises.

The reliance Short places on the equal protection clause is also insufficient for his purposes. It was not until February 5, 1975, that a North Carolina appellate court squarely held that an *express* no-benefit finding must be made at the time of sentencing youthful offenders under twenty-one years of age. *See State v. Mitchell*, 24 N.C.App. 484, 211 S.E.2d 645 (1975). At the time of the *Mitchell* decision, Short was at least twenty-two years old.[4]

We can find no reported case decided by North Carolina appellate courts that has expressly held, or even discussed, whether or not resentencing is appropriate in a case where the mandated no-benefit finding was not expressly made *and* the petitioner was over the age of twenty-one at the time of the appeal. Short has found one case which apparently required resentencing of a person who was twenty when originally sentenced in 1970 and thirty when ordered resentenced by the North Carolina Supreme Court in 1980. *See State v. Ingram*, 23 N.C.App. 186, 280 S.E.2d 450 (1981) (memorandum opinion). No reference to Ingram's age is made in the short published decision.[5] Thus, the Court may or may not have considered the issue. In any event, we think the case is too thin a reed upon which to clutch in making any inference as to what the North Carolina appellate courts would do if squarely faced with the issue.

Short's equal protection argument is straightforward; Short was denied the opportunity for resentencing because he was over twenty-one at the time he sought post-conviction relief even though all others under twenty-one were accorded such relief. Assuming for present purposes that the *Ingram* opinion constitutes an implicit holding that the North Carolina appellate courts now require resentencing of people presently over twenty-one who were youthful offenders at the time of their initial sentencing but did not have the requisite no-benefit finding, we, nevertheless, find no violation of equal protection. Of course, the unpublished background material in *Ingram*, decided by the North Carolina Supreme Court on May 5, 1981 (some two years after Short was denied relief), indicates that the Supreme Court has, at least once, granted relief in such a situation. Still, Short's claim at most, amounts to an allegation that state law was misapplied in his individual case. Such a contention does not suffice to show an equal protection violation. As the Supreme Court emphasized in *Beck v. Washington*, 369 U.S. 541, 554–55, 82 S.Ct. 955, 962–63, 8 L.Ed.2d 98 (1962):

> We have said time and again that [the Equal Protection Clause of] the Fourteenth Amendment does not "assure uniformity of judicial decisions ... [or] immunity from judicial error...." *Milwaukee Electric Ry. & Light Co. v. Wisconsin ex rel. Milwaukee*, 252 U.S. 100, 106, 40 S.Ct. 306, 309, 64 L.Ed. 476 (1920). Were it otherwise, every alleged misapplication of state law would constitute a federal constitutional question.

---

**4.** Although no North Carolina appellate court has ever explicitly held that the *Mitchell* decision is retroactive, at least three North Carolina Supreme Court opinions have applied *Mitchell* retroactively even though in each of those cases the state argued for non-retroactivity. *See State v. Ingram*, 23 N.C.App. 186, 280 S.E.2d 450 (1981); *State v. Wilson*, 280 S.E.2d 458 (N.C.1981); *State v. Freeman*, 279 S.E.2d 358 (N.C.1981).

Although no indication exists in these brief memorandum decisions that non-retroactivity

was urged upon the Supreme Court, the state has acknowledged that it argued for non-retroactivity in each case.

**5.** The information concerning Ingram's age at the time of sentencing and as to the date on which resentencing was ordered was provided for us by Short who obtained a copy of Ingram's police record and the original judgment and commitment document.

*Safrit v. Garrison*, 623 F.2d 330 (4th Cir. 1980) relied on by Short is also inapposite. It concerned an initial imposition of a sentence under the North Carolina youthful offender statute and a subsequent attempt to increase the punishment meted out. The prisoner there was sentenced as a committed youthful offender and was handed an indeterminate term of eight to ten years. The North Carolina Superior Court erred, for a maximum term of four years, to be followed by mandatory release on parole, was called for by the applicable statute governing the sentencing of committed youthful offenders.

Without vacating or otherwise altering the status of committed youthful offender which had previously been accorded to Safrit (and expressly confirmed), another North Carolina Superior Court sought to order his imprisonment as a regular youthful offender, on the grounds that he would not benefit from application of the special treatment accorded to committed youthful offenders. The court thereby sought to validate the indeterminate eight to ten year sentence which was invalid at the outset, and remained so as long as the committed youthful offender status remained in effect.

We held in *Safrit* that the status as committed youthful offender had never been set aside at his behest (he challenged only the place of commitment not the legality of the sentence as a committed youthful offender). The sentence was, therefore, neither void nor illegal. Accordingly, it was not subject to vacation. Consequently, any effort to substitute a harsher punishment would infringe the double jeopardy clause.

In Short's case, to the contrary, the status of committed youthful offender was never achieved. The absence of a no-benefit finding amounted to a *failure* to carry out the statutory mandate to determine whether committed youthful offender status should be conferred; no precedent suggests that it constituted an implied *grant* of youthful offender status. *See State v. Van Matre*, 32 N.C.App. 309, 3107, 231 S.E.2d 688, 689 (1977) ("We reject the contention . . . that any sentence of imprisonment upon a 'youthful offender' without a finding that he would not derive benefit from a committed youthful offender sentence automatically constitutes a committed youthful offender sentence."). While our decision in *Safrit* differed from that of the North Carolina Court of Appeals, the difference stemmed from contradictory views as to whether the prisoner had achieved committed youthful offender status. Having held in the present case that such status had not been achieved by Short, our decision in *Safrit* has no application.

■ Since there is no merit to any of the constitutional challenges asserted by Short, the habeas corpus relief he seeks would have to be predicated on a *non-constitutional* ground. Under such conditions, Short has a heavy burden. In a case alleging a similar type of error under Virginia law, *i.e.* the failure to make a specific finding during sentencing as required by a Virginia statute, we stated the law applicable when a petitioner seeks habeas corpus relief on a non-constitutional foundation:

> But, assuming the absence of the required finding is error, our inquiry must proceed further. Matters of State law not involving federal constitutional issues are not appropriate grounds for federal habeas corpus relief. . . . Therefore, if the error committed by the failure to make the appropriate record finding merely related to a State procedural question, the issue may not be reached in a federal habeas corpus petition unless the alleged error constituted "a fundamental defect which inherently results in a complete miscarriage of justice," or "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." . . . A non-constitutional procedural error must somehow be shown to be a violation of the defendant's most fundamental rights,

else it does not fall within the scope of 28 U.S.C. § 2254.... In the absence of such a "fundamental defect which inherently results in a complete miscarriage of justice," . . . [the procedural error] is cognizable in federal habeas corpus proceedings if, and only if, that failure means that the sentencing court had no jurisdiction to sentence the appellant to jail.

*Hailey v. Dorsey,* 580 F.2d 112, 115 (4th Cir. 1978), *cert. denied,* 440 U.S. 937, 99 S.Ct. 1282, 59 L.Ed.2d 495 (1979) (citations omitted). We do not think that the mere failure of the Superior Court to make a no-benefit finding constitutes a "fundamental defect which inherently results in a complete miscarriage of justice."[6] *Id.* In addition, Short does not allege that the omission of the requisite finding deprived the sentencing Superior Court of jurisdiction. In any event, we think it clear that, like the statutory requirement considered in *Hailey v.*

*Dorsey,* the failure to make the no-benefit finding is procedural under North Carolina law. Since the "no benefit" finding is, at most, a state procedural error in sentencing, "there is no ground for habeas corpus relief." *Id.* at 118.[7]

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

---

6. Although the catch-phrase is obviously not self-defining, this court has recently interpreted the scope of the phrase to mean that:

> [O]nly those statutory rights of a fundamental nature closely related to constitutionally secured rights to fair prosecution and adjudication should be subject to vindication by collateral review of criminal convictions. Though these may include other rights than those directly related to the establishment of guilt or innocence, we do not think they extend to non-traditional statutory guarantees—no matter how worthy of purpose—that are peripheral to the historic concerns with fundamental fairness in the prosecutorial and adjudicative processes leading to criminal conviction and confinement.

*Bush v. Muncy,* 659 F.2d 402, 409 (4th Cir. 1981).

The formulation of the standard enunciated in *Bush* is consistent with the result we reach now and the decision in *Hailey.* Both *Hailey* and the case at bar are cases in which the error alleged revolved around the failure of the state court to apply "non-traditional statutory guidelines", albeit worthy ones, which were "peripheral to the historic concerns with fundamental fairness in the prosecutorial and adjudicative processes."

7. The result that Short is unable to obtain resentencing from the North Carolina courts or habeas relief from us does not result in mani-

fest injustice for a number of reasons. First, Short was originally charged with the first degree murder of his mother, a most heinous offense. Second, Short, represented by counsel, pleaded guilty to the lesser included offense and did not appeal. Third, although eligible since 1974, Short has been denied parole. Even in cases where North Carolina appellate courts have required resentencing because of the lower court's failure to make an express no-benefit finding, the resentencing is a *de novo* proceeding in which the court may consider favorable or unfavorable "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *State v. Lewis,* 38 N.C.App. 108, 110, 247 S.E.2d 282, 284 (1978). The failure of Short to make parole would certainly weigh heavily against sentencing him as a committed youthful offender and might, in fact, convince the judge to impose a greater sentence on Short than he originally received. Since Short is now almost thirty years old, his age might be a significant if not an overriding, reason for a resentencing judge to make a no-benefit finding without hesitation. *See State v. Safrit,* 47 N.C.App. 189, 266 S.E.2d 719 (1980) (affirming a resentencing finding of no-benefit based on the defendant's age (twenty-one) and his violent nature).

Thus, the possibility that the court would sentence Short as a committed youthful offender is, under all the circumstances, very slim.