Daniel C. TURNER, Petitioner,

v.

James E. SULLIVAN, Warden, Sing Sing Correctional Facility; Elizabeth Holtzman, District Attorney, Kings County; and Robert Abrams, Attorney General, State of New York, Respondents.

No. 84 CV 2040.

United States District Court,
E.D. New York.

June 3, 1987.

Daniel C. Turner, pro se.

Brian D. Foley, Asst. Dist. Atty., Brooklyn, N.Y., for respondents.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Daniel Turner has petitioned this Court for a writ of habeas corpus. 28 U.S.C. § 2254. On November 4, 1976, after a jury trial in Supreme Court, Kings County, petitioner was convicted of three counts of robbery in the first degree and two counts of attempted murder in the first degree. He was sentenced to concurrent terms of imprisonment of twelve and one-half to twenty-five years on the robbery counts and twenty years to life on the attempted murder counts.

The Appellate Division, Second Department, affirmed the conviction without opin-

ion on September 26, 1977. On November 30, 1977 the New York Court of Appeals denied defendant's application for leave to appeal.

Petitioner filed a motion to vacate judgment, N.Y.C.P.L. § 440.10(1)(h), on the grounds of prosecutorial misconduct and ineffective assistance of trial and appellate counsel. The motion was denied without opinion on April 27, 1983. The Appellate Division, Second Department, on October 21, 1983 denied petitioner's motion for leave to appeal from the denial of his motion to vacate judgment. Petitioner now seeks federal habeas corpus relief based on the following claims of error: (1) that his statement was obtained in violation of his right not to incriminate himself; (2) that he was denied effective assistance of trial counsel; (3) that he was denied effective assistance of appellate counsel; (4) that prosecutorial misconduct denied him a fair trial; (5) that the court's charge was prejudicial and shifted the burden of proof; and (6) that the trial court improperly denied his motion to vacate the judgment of conviction, in that it did not set forth any findings of fact or conclusions of law as required under New York C.P.L. § 440.-30(7). For the reasons stated below, the petition is denied.

### Facts

On January 15, 1976 petitioner, along with co-defendant Louis Hinson, was indicted for the following crimes: two counts of attempted murder in the first degree; three counts of robbery in the first degree; robbery in the second degree; grand larceny in the second degree; and three counts of criminal possession of a weapon in the second degree. On September 15, 1976 Hinson pleaded guilty to robbery in the first degree and was sentenced to a fifteen-year term of imprisonment.

The evidence offered at trial establishes that on December 30, 1975, at about 9:10 a.m., Turner, Hinson, and a William Leach entered a Metropolitan Savings Bank branch in Brooklyn and held it up at gunpoint. Each participant carried a loaded weapon and was fully masked (Transcript of Trial Record ("Tr.") 62–63).

One of the bank customers, an off-duty patrolman named Francis G. Randall, saw the three men leave the bank, run across the street, enter a light blue Ford LTD with the license number 978KBI, and proceed south on 86th Street toward the Gowanus Expressway. Randall dialed 911 and reported this information (Tr. 71).

In response to the call, two police officers followed the blue Ford along the highway until it exited at 38th Street (Tr. 100–102). The officers pulled over and stopped at 37th Street and started toward the ramp on foot (Tr. 110–111).

In the meantime, Officers Thomas Spadafora and Daniel Benedetti positioned their patrol car on the exit ramp of the Gowanus Expressway, near 38th Street and Fourth Avenue (Tr. 114) and confronted the exiting Ford, which stopped a foot or two in front of their car (Tr. 116). The officers ordered the occupants out of the vehicle, whereupon the passenger seated behind the driver fired a handgun directly at them (Tr. 116–117).

In the ensuing melee, Leach was shot and killed by the police (Tr. 146–48). Hinson was also shot and then surrendered (Tr. 148). Petitioner jumped approximately thirty feet off the highway to the ground and broke his leg. He was then arrested by Officer Stephen Jacques, who had been on patrol nearby at 38th Street and Third Avenue when he heard the shots (Tr. 208). Officer Jacques approached petitioner from behind and said, "Police. Don't move." (Tr. 209, 211). Petitioner turned, put up his hands, and said, "I give up. You got me." (Tr. 210, 215). When petitioner added, "My leg is hurting," the police officer asked, "What happened to you?" Petitioner responded, "I jumped off from the top of the highway." (Tr. 210–211).

At trial defense counsel moved to suppress the words "I jumped off from the top of the highway" because they were uttered in response to the police officer's question, prior to the administration of *Miranda* warnings, at a time when petitioner was in custody. Suppression was denied after a

mid-trial hearing (Tr. 209). The court noted that the defendant was talking about his injuries and not his crime (Tr. 212).

## Discussion

### A. Admissibility of Petitioner's Statement to the Arresting Officer

■ Petitioner argues that his statement "I jumped off from the top of the highway" should not have been admitted because it was uttered after he was in custody but before he was advised of his constitutional rights. He overlooks, however, a crucial ingredient of a *Miranda* violation: the Fifth Amendment bars the introduction of unwarned statements "stemming from custodial interrogation," *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Thus, if the statement is not a result of "either express questioning or its functional equivalent," *Rhode Island v. Innis*, 446 U.S. 291, 300–301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980), no *Miranda* violation exists.

In this case, the officer's question was a natural response to petitioner's remark that his leg hurt. The statement at issue was part of a colloquy, initiated by petitioner, about his physical condition. " 'Interrogation' under *Miranda* refers to express questioning [and] any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301, 100 S.Ct. at 1689–90 (footnotes omitted). The officer's inquiry does not fall within this definition; it was not an effort to elicit information, but rather evidenced the appropriate concern about petitioner's injuries. The officer could not have foreseen that the response might help the prosecution by placing defendant at the scene of the crime. Accordingly, because there was no interrogation and thus no *Miranda* violation, the statement was properly admitted.

### B. Prosecutorial Misconduct and Ineffective Assistance of Trial Counsel

■ Petitioner's claims of prosecutorial misconduct and ineffective assistance of trial counsel may not be reviewed by this Court because of petitioner's failure to comply with valid state procedural requirements. New York C.P.L. § 440.10(2)(c) bars collateral review by a state court if sufficient facts appeared on the record for the issue to have been raised on appeal and the defendant failed to do so. This procedural default was raised by the prosecution in its opposition to petitioner's motion to vacate judgment. Accordingly, the trial court's denial of the motion without opinion is deemed to be based on this procedural ground rather than on the merits. *See Martinez v. Harris*, 675 F.2d 51, 55 (2d Cir.), *cert. denied*, 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982).

"When a procedural default bars litigation of a constitutional claim in state court, a state prisoner may not obtain federal habeas corpus relief absent a showing of 'cause and actual prejudice.' " *Reed v. Ross*, 468 U.S. 1, 11, 104 S.Ct. 2901, 2908, 82 L.Ed.2d 1 (1984); *see Wainwright v. Sykes*, 433 U.S. 72, 87–91, 97 S.Ct. 2497, 2506–09, 53 L.Ed.2d 594 (1977); *Forman v. Smith*, 633 F.2d 634, 640 (2d Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1710, 68 L.Ed.2d 204 (1981). Assuming that petitioner's disagreements with appellate counsel as to what issues to raise on appeal would meet the cause prong of the test, on the latter prong petitioner must show not merely the possibility of prejudice, but that errors at trial worked to his actual and substantial disadvantage. *See United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982). Defendant has failed to satisfy this standard.

### 1. Prosecutorial Misconduct

■ Petitioner apparently believes that the prosecutor misled the defense by stating that no identification testimony was to be offered against petitioner. This allegation of misconduct is based on a misreading of the trial transcript. The assistant district attorney explicitly stated, in response to defense counsel's inquiry whether a *Wade* hearing was in order, that no pretrial identification procedures had been conduct-

ed and that no bank personnel—only police officers—would testify as identification witnesses. This representation was entirely accurate; only the officers involved in his apprehension identified petitioner. There was thus no surprise, no misconduct, and no prejudice to defendant.

2. *Ineffective Assistance of Trial Counsel*

■ Again there is no prejudice. In order to sustain a claim of ineffective assistance of counsel, petitioner must show: 1) that counsel's performance was so deficient that he was not functioning as the "counsel" guaranteed by the sixth amendment; and 2) that the deficient performance deprived petitioner of a fair trial, defined in this context as a trial the result of which is reliable. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Petitioner has failed to satisfy this burden. To prove the prejudice component of an ineffectiveness claim, petitioner must show that it is reasonably likely that the result of the proceeding would have been different absent counsel's errors. *Id.* at 696, 104 S.Ct. at 2069.

Petitioner here claims that trial counsel did not file proper pretrial motions, failed to conduct a proper investigation, and was not ready for trial. Aside from these conclusory allegations, petitioner refers specifically to trial counsel's failure to have excluded petitioner's statement upon arrest and the identification testimony of the arresting officer.

These claims are without merit. Defense counsel did, albeit unsuccessfully, seek suppression of the statement. There was no deficiency in counsel's failure to move for exclusion of the identification testimony because, as noted in Part. B. 1., *supra,* there was no impropriety in the government's offering it, and thus no legal basis for such an application. Moreover, even if counsel had conducted the trial as petitioner would have liked, the result would not have been different: the motion to suppress the statement was properly denied, and a motion to exclude the officers' identification testimony would have been meritless.

Whether counsel's conduct is "outside the wide range of professionally competent assistance" must be determined in light of all the circumstances. *Id.* at 690, 104 S.Ct. at 2066. Having reviewed the record in this matter, I conclude that petitioner has not overcome the strong presumption that counsel rendered adequate assistance and exercised reasonable judgment. *See id.,* 104 S.Ct. at 2066. Petitioner's trial counsel was not ineffective.

C. *Ineffective Assistance of Appellate Counsel*

■ Petitioner claims that appellate counsel was ineffective because he failed to raise three issues suggested by defendant: (1) ineffective assistance of trial counsel; (2) prosecutorial misconduct regarding identification testimony; and (3) improper charge to the jury. For reasons previously set forth, the first two issues are without merit, so the failure to raise them could not have prejudiced petitioner. The third issue—improper charge to the jury—was presented to the appellate court in petitioner's reply brief. There was no inadequacy in appellate counsel's performance, let alone inadequacy that might have affected the outcome of the appeal.

■ A defendant's case is largely controlled by his lawyer, except for certain fundamental decisions reserved to the client, such as whether to plead guilty, whether to appeal, whether to testify at trial and whether to waive a jury. *People v. Ferguson,* 67 N.Y.2d 383, 390, 502 N.Y. S.2d 972, 976, 494 N.E.2d 77, 82 (1986). "[T]o second-guess reasonable professional judgments and impose on counsel a duty to raise every 'colorable' claim suggested by the client would disserve the very goal of vigorous and effective advocacy...." *Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 3314, 77 L.Ed.2d 987 (1982). The indigent defendant does not have a constitutional right to compel appointed counsel to press even non-frivolous points requested by the client, if counsel decides against doing so as a matter of professional judgment. *See id.* at 751, 103 S.Ct. at 3312.

**540**

D. *Charge to Jury*

■ Petitioner claims that the charge to the jury on the issue of acting in concert and aiding and abetting (Tr. 282–286) improperly shifted the burden of proof. He alleges that the charge unfairly carried over his robbery offense as a basis for finding him guilty of attempted murder, a crime with which petitioner claims to have no connection. He further states that the analogies used by the court to explain the charge of acting in concert (Tr. 289) were highly prejudicial.

Review of the charge demonstrates that it is correct and consistent with the language and intent of N.Y.Penal Law § 20.-00, which defines criminal liability for the conduct of another:

> When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct, when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct.

Nothing in the Court's charge to the jury on this issue misled the jury or placed the burden on petitioner (*See* Tr. 282–283).

The court clarified its instruction once at the request of defense counsel (Tr. 286–87), and again at the request of the jury (Tr. 288–292), charging as follows:

> You may find, for example, that Mr. Turner was acting in concert in the bank robbery and was not acting in concert in the attempted murder of the police; or you may find that he was not acting in concert in the bank robbery and acting in concert in the attempted murder of the police; or you may find he was not acting in concert in the bank robbery and not acting in concert in terms of the attempted murder of the police.

This language clearly instructs the jurors that, as they had been earlier told (Tr. 282–83), they were required to make an independent determination of the defendant's guilt or innocence with respect to each crime.

■ To hold a charge invalid the court should not isolate a particular instruction, but rather must determine whether the improper sentences so infected the trial that the conviction violates due process. *Nelson v. Scully*, 672 F.2d 266, 272 (2d Cir.) (citing *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)), *cert. denied*, 456 U.S. 1008, 102 S.Ct. 2301, 73 L.Ed.2d 1304 (1982); *see Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985) (if portion of charge, viewed in isolation, could be regarded as creating presumption relieving government of its burden of persuasion, offending words must then be viewed in context of charge as a whole). In this case both the particular instruction and the charge as a whole were fair; "the jury could not have been misled by the challenged language." *Brayboy v. Scully*, 695 F.2d 62, 66 (2d Cir.1982), *cert. denied*, 460 U.S. 1055, 103 S.Ct. 1505, 75 L.Ed.2d 934 (1983).

E. *Denial of Motion to Vacate Judgment*

■ Petitioner claims that his right to due process of law was violated by the state court's denial of his motion to vacate judgment, New York C.P.L. §§ 440.10, without setting forth on the record findings of fact, conclusions of law, and reasons for its determination, as required under C.P.L. §§ 440.30(7). This complaint about compliance with state law lacks the necessary constitutional predicate for federal habeas corpus review.

This Court may issue a writ under 28 U.S.C. § 2254 only upon a determination that petitioner's custody violates the Constitution, laws or treaties of the United States. *Rose v. Hodges*, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975). A federal district court's inquiry is limited to determining whether the state conviction was obtained by unconstitutional means. *Skipper v. Cox*, 320 F.Supp. 934, 935 (W.D. Va.1970). Petitioner has not suggested in what respect the failure to comply with the state rule has violated his federal due process rights. A writ of habeas corpus may not be issued on the basis of a perceived error of state law. *Pulley v. Harris*, 465

U.S. 37, 41, 104 S.Ct. 871, 875, 79 L.Ed.2d 29 (1984).

*Conclusion*

The petition for a writ of habeas corpus is denied.

SO ORDERED.