THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID HARRIS, Defendant-Appellant.

First District (4th Division)   No. 1—03—1892

Opinion filed April 28, 2005.

Theodore Godfrey, Anna Ahronheim, and Martin S. Carlson, all of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Jon Walters, Assistant State's Attorneys, of counsel), for the People.

JUSTICE QUINN delivered the opinion of the court:

Following a jury trial, defendant David Harris was convicted of first degree murder and attempted armed robbery. After the circuit court sentenced him to death (he had waived his right to a jury during the sentencing phase), he appealed both his conviction and sentence directly to the Illinois Supreme Court. The supreme court affirmed both. *People v. Harris*, 182 Ill. 2d 114, 695 N.E.2d 447 (1998) (*Harris I*).

Defendant then filed two postconviction petitions, alleging that he was denied effective assistance of counsel during his sentencing hearing where, during the aggravation-mitigation phase, defense counsel failed to call any witnesses. Instead, his counsel submitted 17 letters from defendant's family and friends discussing defendant's childhood and good qualities. These letters did not request leniency, but consistently expressed a belief that defendant was not guilty of the crimes for which he was convicted.

In support of his petitions, defendant submitted an affidavit from defense counsel averring that he never investigated defendant's case to develop mitigating evidence for the sentencing and that his failure to do so was not a strategic decision but due solely to his belief that defendant's case was not a "serious death penalty case." Defendant maintained that had his counsel conducted a sufficient investigation, he would have uncovered enough mitigating evidence to avoid the imposition of the death penalty.

The circuit court summarily dismissed defendant's petitions as patently without merit. On appeal, the supreme court reversed and remanded the matter to the circuit court with an order that it conduct an evidentiary hearing into defendant's ineffective assistance claim. *People v. Harris*, 206 Ill. 2d 293, 794 N.E.2d 181 (2002) (*Harris* II).

At some point during fall 2002, before any evidentiary hearing had been held, defendant filed a petition for executive clemency with then-Governor George Ryan, requesting that the Governor commute his sentence to "an appropriate term of imprisonment."[1] On January 10, 2003, the Governor commuted defendant's death sentence to a term of natural life imprisonment without the possibility of parole. After the commutation order was issued, the circuit court granted the State's motion to dismiss defendant's postconviction petitions, concluding that the Governor's act of commutation rendered moot defendant's claim of ineffective assistance of counsel.

On appeal, defendant challenges this finding. Though he recognizes that this court's decision in *People v. Watson*, 347 Ill. App. 3d 181, 807 N.E.2d 628 (2004), *appeal denied*, 211 Ill. 2d 611 (2004), is directly on point, he argues that *Watson* was wrongly decided. Relying on *Madej v. Briley*, 371 F.3d 898 (7th Cir. 2004), he contends that the Constitution mandates that he be afforded a "full remedy" for his trial counsel's ineffectiveness.

According to defendant, if, on remand from the supreme court, the circuit court had found that his counsel was ineffective and awarded him a new sentencing hearing, a "full remedy" could be the difference between his current commuted sentence of life without parole and a term of 20 to 60 years' imprisonment (730 ILCS 5/5—8—1(a)(1)(a) (West 2000)).[2] Though defendant's argument has some initial appeal, we, nevertheless, reject it and dismiss his appeal as moot.

## ANALYSIS

In *Watson*, the defendant was found guilty of first degree murder and aggravated vehicular hijacking. *Watson*, 347 Ill. App. 3d at 182. After the trial court found he had committed the murder in a cold and calculated manner and sentenced him to death, the defendant appealed the trial court's finding directly to the supreme court. *Watson*,

---

[1] Though his petition was not included in the record before this court, it was included in the appendix to the State's brief. Defendant did not object to its presence or contest its validity. On February 8, 2005, we ordered the State to supplement the record with a copy of defendant's petition.

[2] Defendant notes that the crimes for which he was convicted did not carry a mandatory sentence of life without parole. See 730 ILCS 5/5—8—1(a)(1)(c) (West 2000).

347 Ill. App. 3d at 182. While the case was pending on appeal, then-Governor Ryan granted the defendant's petition for executive clemency and commuted his sentence to a term of natural life imprisonment without parole. *Watson*, 347 Ill. App. 3d at 182. The supreme court then transferred the defendant's appeal to this court and we dismissed it as moot. See *Watson*, 347 Ill. App. 3d at 182.

We held that the Governor's act of commuting the defendant's sentence effectively removed the judicially imposed sentence and replaced it with an essentially unreviewable executively imposed one. See *Watson*, 347 Ill. App. 3d at 187; see also *People ex rel. Madigan v. Snyder*, 208 Ill. 2d 457, 480, 804 N.E.2d 546 (2004).[3] Because the defendant was no longer serving a judicially imposed sentence, the separation of powers constitutionally divided between the executive and judicial branches barred us from meddling with the terms and conditions of the defendant's newly commuted sentence, rendering moot the sentencing issue he had raised on appeal. See *Watson*, 347 Ill. App. 3d at 187-88, citing *People ex rel. Johnson v. Murphy*, 257 Ill. 564, 566 (1913).

Moreover, this finding of mootness did not rest upon the specific sentencing error that the commuted defendant raised on appeal, but instead upon the effect the Governor's commutation had upon his sentence. *Watson*, 347 Ill. App. 3d at 190. In other words, it was because the commuted defendant was now imprisoned at the pleasure of the Governor, whose power to determine whether and to what extent a defendant's sentence should be commuted is essentially unreviewable, that the defendant's sentencing issues were rendered moot.

Our holding in *Watson* is and was consistent with numerous other cases which have found that any and all sentencing issues raised by a commuted defendant are rendered moot by the Governor's act of commutation. *People v. Williams*, 209 Ill. 2d 227, 807 N.E.2d 448 (2004); *People v. Evans*, 209 Ill. 2d 194, 808 N.E.2d 939 (2004); *People v. Graham*, 206 Ill. 2d 465, 795 N.E.2d 231 (2003); *People v. Rissley*, 206 Ill. 2d 403, 795 N.E.2d 174 (2003); *People v. Shum*, 207 Ill. 2d 47, 797 N.E.2d 609 (2003); *People v. Moore*, 207 Ill. 2d 68, 797 N.E.2d 631 (2003); *People v. Ceja*, 204 Ill. 2d 332, 789 N.E.2d 1228 (2003); *People*

---

[3]The only discernable limits to the Governor's commutation power were that (1) he could not increase the defendant's sentence and (2) he could not change the crime for which the defendant was convicted. See *Watson*, 347 Ill. App. 3d at 190, citing *Schick v. Reed*, 419 U.S. 256, 267, 42 L. Ed. 2d 430, 439, 95 S. Ct. 379, 386 (1974); *People ex rel. Fullenwider v. Jenkins*, 322 Ill. 33, 36-40, 152 N.E.2d 549 (1926). Neither of these limitations is relevant here.

*v. Miller*, 203 Ill. 2d 433, 786 N.E.2d 989 (2002); *People v. Brown*, 204 Ill. 2d 422, 792 N.E.2d 788 (2002); *People v. Lucas*, 203 Ill. 2d 410, 787 N.E.2d 113 (2002); *People v. Mata*, 353 Ill. App. 3d 784, 786-87, 819 N.E.2d 1261, 1264 (2004). In the instant case, former Governor Ryan commuted defendant's death sentence to natural life without parole. Just as in *Watson*, any and all sentencing issues raised by defendant on appeal are rendered moot by that commutation. *Watson*, 347 Ill. App. 3d at 190.

In addition, defendant sought that commutation from then-Governor Ryan. In his "Petition for Executive Clemency," defendant requested that "his death sentence be commuted to an appropriate sentence of punishment." Governor Ryan, acting pursuant to the authority reserved to his office by the Illinois Constitution, commuted defendant's death sentence to natural life imprisonment without parole. See Ill. Const. 1970, art. V, § 12. As we noted in *Watson*, " '[i]t would be a curious logic to allow a convicted person who petitions for mercy to retain the full benefit of a lesser punishment with conditions, yet escape burdens readily assumed in accepting the commutation which he sought.' " *Watson*, 347 Ill. App. 3d at 187, quoting *Schick*, 419 U.S. at 267, 42 L. Ed. 2d at 439, 95 S. Ct. at 385.

The only real difference between this case and *Watson* is the procedural posture of each case when the Governor's commutation order was issued. In *Watson*, the defendant's direct appeal was pending before the supreme court when the Governor commuted his sentence. See *Watson*, 347 Ill. App. 3d at 182. Here, the supreme court had ordered the circuit court to hold an evidentiary hearing on defendant's postconviction claim of ineffective assistance provided at his sentencing hearing. There is nothing in the record to indicate, nor does defendant claim, that this hearing was purposely delayed by the State or that the supreme court's order was otherwise intentionally ignored. Thus, we find the cases' differing procedural postures immaterial.

Defendant recognizes the hurdle that *Watson* places before him, but argues that the Seventh Circuit's holding in *Madej* requires that his ineffective assistance claim be heard. First, we disagree with defendant's characterization of *Madej*'s holding.

In *Madej*, a federal district court issued a writ of *habeas corpus* ordering the State to provide the defendant with a new sentencing hearing because of his trial counsel's ineffectiveness. *Madej*, 371 F.3d at 898. Per the district court's order, the State was to provide this hearing within 60 days of the order. *Madej*, 371 F.3d at 899. After this deadline had passed, but before any hearing was held, then-Governor Ryan commuted the defendant's death sentence to natural life

imprisonment. *Madej*, 371 F.3d at 899. Following this commutation order, the State moved the district court to vacate its order as moot. *Madej*, 371 F.3d at 899. The district court declined, noting that at a new hearing the defendant would be entitled to seek a term lower than the natural life sentence substituted by the Governor. *Madej*, 371 F.3d at 899.

The Seventh Circuit affirmed, finding it irrelevant that "the [S]tate believe[d] the order [of the district court] ineffectual" following the Governor's commutation of the defendant's sentence. *Madej*, 371 F.3d at 899-900. The court noted that "even erroneous directives [of a federal court] must be obeyed while they are outstanding." *Madej*, 371 F.3d at 900, citing *Pasadena City Board of Education v. Spangler*, 427 U.S. 424, 439-40, 49 L. Ed. 2d 599, 610, 96 S. Ct. 2697, 2706 (1976), quoting *Howat v. Kansas*, 258 U.S. 181, 190, 66 L. Ed. 550, 559, 42 S. Ct. 277, 281 (1922) ("It is for the court of first instance to determine the question of validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished").

The Seventh Circuit's decision in *Madej* concerns the respect that parties must accord judicial orders. *Madej*'s holding springs from the State's alleged "obduracy" in ignoring a validly issued order by the district court and stands for the principle that no party may intentionally disregard such an order simply because it believes that order is erroneous. See *Madej*, 371 F.3d at 899-900. Here, defendant does not argue that the State engaged in such conduct. Though our supreme court had ordered that he receive a new sentencing hearing, defendant does not contend that the State either disregarded that order or purposely delayed the hearing.

Instead, defendant relies upon the following language in *Madej* to support his argument that the Governor's commutation order did not render the sentencing issue presented in his postconviction petition moot:

> "The outcome of a properly conducted [sentencing hearing] could have been a sentence as low as 20 years imprisonment. *** A full remedy for the constitutional shortcoming at the original sentencing hearing entails allowing [the defendant] to seek that lower sentence now. Although the [S]tate contends that the Governor's commutation bars that option as a matter of state law, the Constitution supercedes any incompatible state principles." *Madej*, 371 F.3d at 899.

To the extent that this language could be read as supporting defendant's arguments, we disagree.

In divvying up the powers between the executive and judicial branches, Illinois has decided to entrust her governor, the chief executive, with an essentially unreviewable power to pardon or commute those imprisoned within her borders. See *Snyder*, 208 Ill. 2d at 480 (noting that the governor's pardoning power is essentially unreviewable); *People v. Jenkins*, 325 Ill. 372, 374 (1927) (stating that the governor's acts in the exercise of his pardoning power can be controlled only by his conscience and his sense of public duty). In *Dreyer v. Illinois*, 187 U.S. 71, 83-84, 47 L. Ed. 79, 85, 23 S. Ct. 28, 32 (1902), the United States Supreme Court noted the inviolability of such a decision:

> "A local statute investing a collection of persons not of the judicial department, with powers that are judicial and authorizing them to exercise the pardoning power which alone belongs to the Governor of the State, presents no question under the Constitution of the United States. The right to the due process of law prescribed by the Fourteenth Amendment would not be infringed by a local statute of that character. Whether the legislative, executive, and judicial powers of a State shall be kept altogether distinct and separate, or whether persons or collections of persons belonging to one department may, in respect to some matters, exert powers which, strictly speaking, pertain to another department of government, is for the determination of the State. And its determination one way or the other cannot be an element in the inquiry, whether the due process of law prescribed by the 14th Amendment has been respected by the state or its representatives when dealing with matters involving life or liberty."

Thus, Illinois's decision as to the separation of powers amongst her branches of government, *i.e.*, in whom the pardoning power shall be bestowed and whether that power is subject to judicial review, are "state principles" beyond the purview of the United States Constitution. See *Dreyer*, 187 U.S. at 83-84, 47 L. Ed. at 85, 23 S. Ct. at 32; see also *Rose v. Hodges*, 423 U.S. 19, 22, 46 L. Ed. 2d 162, 165-66, 96 S. Ct. 175, 177 (1975) ("If Tennessee chooses to allow the Governor to reduce a death penalty to a term of years without resort to further judicial proceedings, the United States Constitution affords no impediment to that choice").

We recognize the clash of competing rights that this holding causes, *e.g.*, a defendant's rights to effective assistance of counsel and due process of law, Illinois's decision as to the division of powers among her three branches of government, and the position of the United States Constitution as the "supreme Law of the Land" (U.S. Const., art. VI, cl. 2). However, our supreme court has repeatedly held that any and all sentencing issues raised by a commuted defendant are

moot. See *Williams*, 209 Ill. 2d 227; *Evans*, 209 Ill. 2d at 208; *Graham*, 206 Ill. 2d at 470; *Rissley*, 206 Ill. 2d at 463; *Shum*, 207 Ill. 2d at 51; *Moore*, 207 Ill. 2d at 70; *Ceja*, 204 Ill. 2d at 335; *Miller*, 203 Ill. 2d at 438; *Brown*, 204 Ill. 2d at 425; *Lucas*, 203 Ill. 2d at 418-19. As a lower court, we are bound by this precedent. See *People v. Rosinski*, 351 Ill. App. 3d 459, 463, 813 N.E.2d 1078 (2004), quoting *Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 347 Ill. App. 3d 828, 836 (2004) (" 'After our supreme court has declared the law with respect to an issue, this court must follow that law, as only the supreme court has the authority to overrule or modify its own decisions' ").

It should be noted that although defendant's remedy does not lie in this court, it does not follow that one does not exist. Defendant is free to apply to the present Governor or future governors for a complete pardon, commutation of his sentence to a term of years, or relief from the no-parole provision. See *Schick*, 419 U.S. at 268, 42 L. Ed. 2d at 439, 95 S. Ct. at 386.

Appeal dismissed.

GREIMAN and THEIS, JJ., concur.

