WIGGINS, Justice
(concurring specially)-
I join in the majority opinion but write separately to point out some observations concerning whether the Governor has the constitutional authority to commute Rag-land’s sentence.
After the United States Supreme Court held that sentencing a juvenile to mandatory life in prison without parole is unconstitutional, a question emerged as to whether the Governor can commute such a sentence. In this situation, is the Governor commuting a void sentence or sentencing the defendant for the first time in violation of the separation of powers doctrine? See Collins v. State, 550 S.W.2d 643, 654-55 (Tenn.1977) (Brock, J., dissenting); Stanley v. State, 490 S.W.2d 828, 833 (Tex.Crim.App.1972) (Onion, P.J., dissenting); cf. Klouda v. Sixth Judicial Dist. Dep’t of Corr. Servs., 642 N.W.2d 255, 263 (Iowa 2002) (holding the statute granting administrative law judges, who are part of the executive branch, the power to revoke probation violated article III, section 1 of the Iowa Constitution).
Another observation is that the Governor’s imposition of a sentence might constitute a denial of due process — such as the right to present evidence at the sentencing stage under article I, section 9 or the right to be informed of accusations, the right to a jury trial, the right to compulsory process, and the right to counsel under article I, section 10 of the Iowa Constitution. See Rose v. Hodges, 423 U.S. 19, 26-27, 96 S.Ct. 175, 179-80, 46 L.Ed.2d 162, 168 (1975) (Brennan, J., dissenting) (“If respondents were ‘sentenced’ by the Governor, were they denied due process when not afforded [the] opportunity [to present evidence] ... ?”); Collins, 550 S.W.2d at 655 (Brock, J., dissenting) (arguing the commutation procedure deprived the de *123 fendant of the right to a jury trial under Tennessee common law); Whan v. State, 485 S.W.2d 275, 280 (Tex.Crim.App.1972) (Onion, P.J., dissenting) (“To permit the Governor ... such authority, under the circumstances of this case, would allow them to intervene and prevent a retrial and substitute their idea of what punishment should be assessed rather than a jury....”).
My third observation is that a prisoner could also challenge a commutation that required the prisoner to waive his or her constitutional, civil, fundamental, or human rights prospectively. Cf. State v. Baldon, 829 N.W.2d 785, 803 (Iowa 2013) (holding parolee’s signature on parolee agreement did not establish prospective consent to searches under article I, section 8 of the Iowa Constitution).
My final observation is that the Governor’s action may have violated article IV, section 16 of the Iowa Constitution. This provision grants the Governor commutation power, subject to regulations provided by law. Iowa Const, art. IV, § 16. The legislature has regulated the Governor’s power to commute a person’s sentence by enacting certain legislation regulating his power to commute. The Code provides that “[pjrior to the governor granting a reprieve, pardon, or commutation to an offender convicted of a violent crime, the governor shall notify a registered victim that the victim’s offender has applied for a reprieve, pardon, or commutation.” Iowa Code § 915.19 (2013). The Code also provides a specific procedure the Governor must follow to commute the sentence of a person who receives a life sentence without the possibility of parole. Id. § 902.2. This procedure involves referring the matter to the Iowa Board of Parole before the Governor can commute. Id. The record is devoid of any evidence showing the Governor followed any of these legislative enacts ments.
However, we need not reach these important constitutional issues today and leave them for another day.