**Laura Ann TROIANI, Petitioner,**

v.

**Susan POOLE, Warden, Respondent.**

**No. 92–0314–IEG.**

United States District Court,
S.D. California.

June 2, 1994.

Daniel E. Lungren, Atty. Gen., George Williamson, Chief Asst. Atty. Gen., Gary W. Schons, Sr. Asst. Atty. Gen., Garrett Beaumont, Janelle B. Davis, Supervising Deputy Attys. Gen., San Diego, CA, for respondent.

Laura Ann Troiani, pro se.

## AMENDED[1] ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS

GONZALEZ, District Judge.

### BACKGROUND

Petitioner, Laura Ann Troiani, is currently serving a term of life in prison without possibility of parole after having been convicted of conspiracy and murder with special circumstances. Petitioner conspired with five marines in a plan to kill her husband, Carlo, a sergeant in the U.S. Marine Corps. Petitioner planned to pay the co-conspirators from Carlo's life insurance proceeds. In August 1984, Carlo Troiani was killed near his car on a deserted road near Camp Pendleton. The case received much local publicity and the court severed petitioner's case from those of her co-defendants.

A jury drawn from the North San Diego County Judicial District found petitioner guilty in August 1987. The Court of Appeal for the Fourth Appellate District of California affirmed Troiani's conviction in a 110–page unpublished opinion issued in February 1991. The Supreme Court of California denied Troiani's petition for review in May 1991. California Governor Pete Wilson denied petitioner executive clemency in May 1993. Troiani now files a petition for writ of habeas corpus in this court, after having exhausted her state remedies, and claims that she is in custody in violation of the Constitution of the United States. 28 U.S.C. § 2254 (1988).

In addition to requesting that this court appoint her counsel, Troiani raises six issues in her habeas petition. She claims that: 1) her 5th amendment right against self-incrimination, her due process rights and her 6th amendment right to counsel were violated when the trial court ordered her to undergo a mental examination by a prosecution psychiatrist; 2) her 5th amendment right against self-incrimination and her due process right that requires the prosecution prove every element of the offense beyond a reasonable doubt were violated when the trial court allowed the prosecution discovery of documents used to form the basis of a defense psychiatrist's opinion; 3) her due process rights were violated when the trial judge held an ex parte conference where prosecutors explained the basis for the peremptory challenge of a juror; 4) her 6th amendment right to compulsory process and due process right to present a defense were violated when the trial judge excluded the testimony of a defense witness sociologist; 5) her due process rights to a fair trial and an impartial jury were violated by extensive and pervasive pretrial publicity; and finally, 6) her due process rights were violated by the admission of an involuntary confession.

■ Petitioner's habeas claims are identical to those raised in the California Court of Appeal. The threshold requirement for this court, then, is to determine what standard of deference, if any, is due to the state court's findings. In reviewing habeas petitions from state prisoners, federal courts must presume that the state court's factual findings are correct. 28 U.S.C. § 2254(d) (1988);[2] *Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986). In ruling on a prisoner's habeas claims, the district court must make clear it is applying the presumption of correctness required by § 2254(d). The presumption applies to both state trial and appellate court findings of fact. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Neuschafer v. McKay,* 807 F.2d 839, 841 (9th Cir.1987). "Mixed" questions of law and fact, and pure questions of law, however, are subject to full plenary review in federal court. *Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985).

---

1. This amended order is being issued to correct an error on page 24, lines 20–27 of the Order Denying Petitioner's Petition for Writ of Habeas Corpus signed and filed June 2, 1994.

2. 28 U.S.C. § 2254(d) provides: "In any proceeding instituted in a Federal Court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction ... shall be presumed to be correct...."

## Appointment of Counsel

■ Before reaching the merits of the issues before this court, petitioner requests that she be appointed counsel. While state habeas petitioners enjoy no right to counsel in federal habeas proceedings, *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987); *Harris v. Vasquez*, 949 F.2d 1497, 1513–14 (9th Cir.1990), Rule 8 of the Rules Governing § 2254 Cases requires that counsel be appointed if the habeas petition raises issues which mandate an evidentiary hearing.

■ The circumstances under which a federal hearing is mandatory are specified in 28 U.S.C. § 2254(d) (1988).[3] In situations where an evidentiary hearing is not mandatory, the court may decide within its discretion that such a hearing is nevertheless desirable. If the court decides that an evidentiary hearing is neither required nor desirable, it may dispose of the petition "as justice shall require." *See* Rule 8(a), Rules Governing § 2254 Cases. In addition, when a habeas petitioner has a good understanding of the issues and the ability to present forcefully and coherently her contentions, no attorney is legally required. *LaMere v. Risley*, 827 F.2d 622, 626 (9th Cir.1987).

■ After full and careful review of petitioner's habeas motion, the points and authorities offered in support of her motion, the Attorney General's answer, and the entire trial court record, it is the opinion of this court that petitioner received a full and fair state court evidentiary hearing which resulted in reliable findings. 28 U.S.C. § 2254(d) (1988); *Townsend v. Sain*, 372 U.S. 293, 319, 83 S.Ct. 745, 760, 9 L.Ed.2d 770 (1963). In addition, it is clear that petitioner has a good understanding of the issues raised in her petition, and has argued them forcefully and coherently. *LaMere*, 827 F.2d at 626.

Therefore, an evidentiary hearing is neither required nor desirable and petitioner's request for appointment of counsel is hereby **DENIED.**

### 1) Mental Exam by Prosecution Psychiatrist

Petitioner claims that her 5th amendment right against self-incrimination and her 6th amendment right to counsel were violated when the trial court ordered a mental examination by a prosecution psychiatrist, Dr. Goldzband. The Court of Appeal for the Fourth District upheld the trial court's ruling, relying on *People v. Danis*, 31 Cal. App.3d 782, 107 Cal.Rptr. 675 (1973). *Danis* held admissible the testimony of a court-appointed psychiatrist who had conducted a mental examination of the defendant. Danis claimed a diminished capacity defense and argued that he was unable to entertain the required intent to commit theft. *Id.* at 784, 107 Cal.Rptr. 675. The prosecution offered the testimony to rebut the defendant's psychiatric testimony in support of the diminished capacity defense. The court held that the testimony was admissible because the defendant had already waived his privilege against self-incrimination by placing his mental state in issue. *Id.* at 786–87, 107 Cal.Rptr. 675.

### A. 5th Amendment Claim

■ Petitioner invoked her 5th amendment privilege against self-incrimination at trial, but claims that the Court of Appeals' reliance on *Danis* is inapposite and that the court-ordered mental exam was inappropriate because she did not offer a diminished capacity or insanity defense. However, petitioner based her defense on the contention that she did not form the requisite criminal intent to kill or to participate in a conspiracy to kill due to her depressed mental state.

---

**3.** An evidentiary hearing in district court is not mandatory unless a petitioner can establish that: 1) the merits of the factual dispute were not resolved in the State court hearing; 2) the fact-finding procedure employed by the State court was not adequate to afford a full and fair hearing; 3) the material facts were not adequately developed at the State court hearing; 4) the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State proceeding; 5) the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding; 6) the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or 8) the State court record, considered as a whole, does not fairly support the factual determinations which were made. 28 U.S.C. § 2254(d) (1988).

(*See* Cal.Ct.App. Op. at 18). To negate the specific intent underlying the offenses charged against her, petitioner offered the testimony of a forensic psychiatrist, Dr. Mark J. Mills. Dr. Mills gave extremely detailed testimony concerning petitioner's upbringing and psychological disabilities. Dr. Mills opined that petitioner was incapable of implementing the murder plans and "didn't really feel she was a participant in them." (Cal.Ct.App. Op. at 76). The prosecution introduced Dr. Goldzband's testimony to rebut this evaluation.

■ Under California law, medical experts have routinely been permitted to give opinions as to the state of mind (sanity, malice, premeditation, specific intent) of the defendant in criminal cases. *See* 1 B.E. Witkin, *California Evidence*, § 498, at 470–71 (3d ed.1986). The admissibility of such evidence is not limited to evidence of mental disease or defect bearing upon the affirmative defenses of insanity or diminished capacity; testimony which bears upon the existence of the mental state required by the offense charged is also admissible. *People v. Gorshen*, 51 Cal.2d 716, 336 P.2d 492 (1959).

Federal case law has not been uniform, however, with respect to the admissibility of expert testimony on the issue of intent when the defense of insanity is not raised. *See* Charles A. Wright, *Federal Practice & Procedure*, § 208, at 752 n. 1 (2d ed., 1980 & Supp.1994). Federal Rule of Criminal Procedure 12.2(b), only requires that the government be given notice of a defendant's insanity defense and notice of expert testimony of a defendant's mental condition. The original Committee Notes to Fed.R.Crim.P. 12.2(b) carefully noted that the Rule only provided that pretrial *notice* be given if a defendant intended to introduce such evidence: it did not purport to define its admissibility in cases where the defendant did not raise an insanity defense. *See* Fed.R.Crim.P. 12.2(b) Advisory Committee's Notes. The Rule was amended in 1983, however, and its language expanded to include expert testimony relevant to "*any* mental condition of the defendant [which] bear[s] upon the issue of his guilt." *Id.* (emphasis added).

■ It is clear, however, that the Ninth Circuit grants the trial courts wide latitude in deciding whether to admit or exclude psychiatric evidence directed to the capacity of a defendant to entertain a specific intent. *See, e.g., United States v. Demma*, 523 F.2d 981 (9th Cir.1975); *United States v. Byers*, 730 F.2d 568 (9th Cir.1984). The 5th amendment does not prohibit the use of a defendant's statements which are made during a court-ordered or court approved mental examination so long as they are offered strictly to rebut the defendant's state of mind at the time the offense was committed. *See Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) *Buchanan v. Kentucky*, 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987); Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure*, § 20.4 at 867 (2d ed.1992).

In petitioner's case, the court admitted the testimony of prosecution psychiatrist Goldzband to directly rebut that of defense forensic psychiatrist Mills, who testified at length about petitioner's psychological disabilities. Dr. Mills concluded that in his opinion, petitioner was "unable to implement or follow through with any detailed plan" and "incapable of deflecting events" in which she participated and which resulted in her husband's murder. (Cal.Ct.App. Op. at 76). Clearly, defense counsel offered his testimony to suggest that petitioner did not have the mens rea to murder or to commit conspiracy to murder. This court therefore finds that nothing in the trial court's appointment of Goldzband, nor in his rebuttal testimony at trial, in any way compelled petitioner to incriminate herself, and thus no 5th amendment violation took place.

**B. 6th Amendment Claim**

■ In addition, petitioner claims that her 6th amendment rights were violated by the trial court's decision to subject her to the mental examination conducted by Dr. Goldzband. The 6th amendment guarantees the accused in a criminal prosecution the effective assistance of counsel during critical stages of the prosecution. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Supreme Court has

not addressed the issue of whether a court-ordered or court-approved psychiatric examination constitutes a critical stage of the criminal proceeding. California courts, however, have long held that the presence of counsel is constitutionally required if the examining psychiatrist testifies for the prosecution at the guilt stage of the trial. *People v. Anderson,* 63 Cal.2d 351, 46 Cal.Rptr. 763, 406 P.2d 43 (1965). The Ninth Circuit has also held that the 6th amendment entitles a defendant to notice and the opportunity to consult with counsel before a court-ordered psychiatric evaluation pursuant to Fed. R.Crim.P. 12.2(c). *United States v. Garcia,* 739 F.2d 440, 442 (9th Cir.1984).

In this case, petitioner admits that the trial court *did* grant her the opportunity to consult with counsel during the examination by Dr. Goldzband, (*See* Points & Authorities in Support of Petition for Writ of Habeas Corpus at 2), and she offers no further proof of any constitutional violation. Therefore, this court finds that, without more, petitioner's 6th amendment claim is meritless.

## 2) Discovery by the Prosecution

Petitioner next argues that her 5th amendment privilege against self-incrimination, and her due process right requiring the prosecution to prove every element of the offense beyond a reasonable doubt, *See In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), were violated when the trial court allowed the prosecution discovery of documents used to form the basis of defense psychiatrist Mills' testimony without first considering whether the release of those documents would unconstitutionally lighten the prosecution's burden of proof. Dr. Mills referred to notes made by a clinical psychologist, Dr. Bondell, who had conducted family counseling sessions with petitioner, her husband, and son in early 1984. (Cal.Ct.App. Op. at 76). Petitioner does not object to Dr. Mills's reliance on Dr. Bondell's notes on state law evidentiary grounds that the discovery violated her patient-client privilege, nor does she argue that the notes served as an improper basis for Dr. Mills's expert testimony. (Cal.Ct.App. Op. at 77). Such evidentiary objections, based purely on state

law, are not cognizable on federal habeas corpus review. *Estelle v. McGuire,* — U.S. —, —, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 874–75, 79 L.Ed.2d 29 (1984). Thus, the prosecutorial discovery of Dr. Bondell's notes is properly raised under § 2254 only if the release of those documents was so improper that it violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241 (1988); *Rose v. Hodges,* 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975) (per curiam). Petitioner argues that the 5th amendment and her right to due process required the trial court, when confronted with the prosecution's request for Dr. Bondell's notes, to first conduct an inquiry into whether the release of those documents would lighten the prosecution's burden of proof. Petitioner relies primarily on two California cases, *In re Misener,* 38 Cal.3d 543, 213 Cal.Rptr. 569, 698 P.2d 637 (1985) and *Prudhomme v. Superior Court,* 2 Cal.3d 320, 85 Cal.Rptr. 129, 466 P.2d 673 (1970), but she offers no federal precedent in support of such a proposition.

The California Court of Appeal, relying solely on state law, held that petitioner simply misconstrued *Misener* and *Prudhomme* and distinguished those cases because they related to prosecutorial requests for discovery involving the work product of defense counsel. (Cal.Ct.App. Op. at 77). No work product issues were raised by the production of Dr. Bondell's notes. The notes were not created by defense counsel nor were they created in preparation for the trial. They were simply part of an independent inventory of evidence relating to the murder investigation which were made material when Dr. Mills used them in preparation for his testimony. Therefore, they were properly discoverable by the prosecution. (Cal.Ct.App. Op. at 78). The factual findings concerning the nature of Dr. Bondell's notes are adequately supported by the state court record and are thus presumed to be true. 28 U.S.C. § 2254(d) (1988).

Petitioner's arguments on habeas are virtually identical to those made on direct appeal. Petitioner claims that *Prudhomme* and *Misener* place an affirmative duty on the

trial judge to consider whether the discovery sought will in *any* way lighten the prosecution's burden of proof. This is simply not a federal constitutional requirement. In *Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967) the Supreme Court made it clear that "the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial," but it does not require that federal courts act as "rulemaking organ[s] for the promulgation of state rules of criminal procedure." *Id.* at 563–64, 87 S.Ct. at 653–54.

Even if, as petitioner suggests, *Prudhomme* and *Misener* can be interpreted to place such an affirmative duty on a state trial judge who must decide discovery matters, those cases were based on California constitutional law, which at the time, was considerably more solicitous of the privilege against self-incrimination than the federal constitution. *See Reynolds v. Superior Court,* 12 Cal.3d 834, 842–43, 117 Cal.Rptr. 437, 528 P.2d 45 (1974). In addition, this court notes that California's *Prudhomme* line of cases were superseded in 1990 by Proposition 115, a constitutional amendment which now provides that discovery be afforded in a criminal case only as permitted by statute or when mandated by the federal constitution. *See* Cal.Penal Code § 1054(e) (1994); Cal.Penal Code § 1054.3 (1994).[4] This court further notes that California's reciprocal discovery statutes have been held to be constitutional under both the 5th and 6th amendments of the federal constitution. *Izazaga v. Superior Court,* 54 Cal.3d 356, 285 Cal.Rptr. 231, 815 P.2d 304 (1991); *Hobbs v. Municipal Court,* 233 Cal.App.3d 670, 284 Cal.Rptr. 655 (Ct. App.1991).

The federal court has the inherent power to authorize that the prosecution discover notes, statements, or reports in the possession of the defense that facilitate full disclosure of all relevant facts. *United States v. Nobles,* 422 U.S. 225, 231, 95 S.Ct. 2160, 2166–67, 45 L.Ed.2d 141 (1975). The discovery at issue in petitioner's case is indistinguishable from the discovery ordered in *Nobles.* There, the Supreme Court upheld a trial court order compelling a criminal defendant to disclose, during trial, relevant portions of a defense investigator's report for purposes of cross-examining him. The Court held that the 5th amendment privilege against compulsory self-incrimination, being personal to the defendant, does not extend to the testimony or statements of third parties called as witnesses at trial. *Id.* at 234, 95 S.Ct. at 2168. The defendant in *Nobles* did not prepare the report and there was no suggestion that the portions of the report subject to disclosure reflected any information that the defendant personally conveyed to the investigator.[5] Therefore, "requiring their production from the investigator [did] not in any sense compel [the defendant] to be a witness against himself or extort communications from him." *Id.* at 233–34, 95 S.Ct. at 2168. The Supreme Court also found that the privilege derived from the attorney work product doctrine was not available to prevent disclosure of the investigative report since the defendant elected to present the investigator as a witness in his behalf, and thus waived the privilege with respect to matters raised in his direct testimony. *Id.* at 238–40, 95 S.Ct. at 2170–71.

Petitioner's case is substantially the same. Dr. Bondell's notes were released to the prosecution for purposes of cross-examina-

---

4. Cal.Penal Code § 1054.3 (West Supp.1993), added by Initiative Measure (Prop. 115) and approved on June 5, 1990, provides that "[t]he defendant and his or her attorney shall disclose to the prosecuting attorney: (a) The names and addresses of persons, other than the defendant, he or she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements of those persons, *including any reports or statements of experts made in connection to the case,* and including the results of mental or physical examinations, scientific tests, experiments or comparisons which the defendant in-

tends to offer in evidence at the trial." (emphasis added).

5. The 5th amendment guarantee protects only against forced individual disclosure of a "testimonial or communicative nature." *Schmerber v. California,* 384 U.S. 757, 761, 86 S.Ct. 1826, 1830–31, 16 L.Ed.2d 908 (1966); *United States v. Wade,* 388 U.S. 218, 222, 87 S.Ct. 1926, 1929–30, 18 L.Ed.2d 1149 (1967); *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

tion only after the defense psychiatrist, Dr. Mills used them as a basis of his expert opinion concerning petitioner's mental stability. Therefore, petitioner waived any 5th amendment privilege she may have had by making the tactical decision to put Dr. Mills on the stand. Furthermore, this court finds it questionable whether Dr. Bondell's notes were at all incriminating or testimonial in nature. Petitioner offers no proof that Dr. Bondell's notes contained any statements ever made by the petitioner personally. Therefore, this court finds that neither petitioner's 5th amendment privilege against self-incrimination nor her due process rights were violated when the trial judge released Dr. Bondell's notes to the prosecution.

### 3) Ex Parte Conference

 Petitioner does not challenge the trial judge's determination that the prosecution's peremptory challenge of prospective juror Bolden was properly based on bona fide racially neutral criteria.[6] Instead, petitioner challenges the trial judge's decision to hold an ex parte conference, where he allowed the prosecution an opportunity in chambers to provide justification for Bolden's exclusion. Petitioner claims that the ex parte nature of the conference violated her due process right to be present and her right to counsel.

The right of a criminal defendant to an adversary proceeding is fundamental to our system of justice. *See Nix v. Williams*, 467 U.S. 431, 454–55, 104 S.Ct. 2501, 2514–15, 81 L.Ed.2d 377 (1984) (Stevens, J., concurring). This includes the right to be personally present and to be represented by counsel at critical stages during the course of the prosecution. *United States v. Wade*, 388 U.S. 218, 224–25, 87 S.Ct. 1926, 1930–31, 18 L.Ed.2d 1149 (1967). The Ninth Circuit views situations where the court acts with the benefit of only one side's presentation as "uneasy com-

promises" which require some "overriding necessity, such as the need to act quickly or to keep sensitive information from the opposing party." *United States v. Thompson*, 827 F.2d 1254, 1258 (9th Cir.1987). Absent such compelling justification, ex parte proceedings are "anathema" in our system of justice and, in the context of a criminal trial, may amount to a denial of due process. *Id.* at 1258–59.

The California Court of Appeal considered petitioner's ex parte challenge and specifically relied on Fourth and Ninth Circuit decisions which uphold the limited use of in camera proceedings when the prosecution is forced to rebut the presumption of racial prejudice in peremptory practices and the defendant's presence would threaten disclosure of trial strategy. (*See United States v. Tindle*, 860 F.2d 125, 131–32 (4th Cir.1988); *United States v. Garrison*, 849 F.2d 103, 106–07 (4th Cir.1988); *United States v. Alcantar*, 832 F.2d 1175, 1180 (9th Cir.1987); *Thompson*, 827 F.2d at 1259.)

In *Thompson*, the Ninth Circuit held that the potential for release of confidential information which might negatively affect the prosecution's ability to conduct its case is sufficient justification for an ex parte proceeding only if it is shown that the prosecution's motive for excluding jurors will "grow out of its case strategy, and divulging those reasons to opposing counsel could cause it severe prejudice." *Id.* at 1259.

In petitioner's case, the trial judge found that the ex parte proceeding was proper because in order to explain its objection to Bolden as a juror, the prosecution would have to reveal matters of case strategy involving a rating system it had devised for ranking prospective jurors. [Cal.Ct.App. Op. at 38–39]. The judge based his decision to grant an in camera hearing on the fact that defense counsel's knowledge of the prosecution's method of ranking jurors in terms of desirability would prejudice the prosecutor's

---

6. Both the trial court and the Fourth District of California Court of Appeal applied the test enunciated in *People v. Wheeler*, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978), which held that as part of the defendant's constitutional right to a trial by a representative jury, peremptory challenges may not be used to strip from the jury all or most members of an identifiable race

solely because of a presumed "group bias." *Id.* at 276–277, 148 Cal.Rptr. 890, 583 P.2d 748. *Wheeler* provided a California defendant with constitutional jury selection safeguards similar to those which were eventually adopted by the United States Supreme Court in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

ability to further carry out its jury selection plans. *Id.* In addition to the trial court's finding that the prosecutor's juror ranking system was a matter of case strategy that, if revealed, would prejudice the prosecution in the case, the California Court of Appeal found the ranking system privileged as work-product not subject to disclosure. *Id.* at 39.

Facts underlying the findings of both the state trial and appellate courts are presumed to be true. *Mata,* 449 U.S. at 547, 101 S.Ct. at 769; 28 U.S.C. § 2254(d) (1988). Based on these facts, this court finds that the ex parte conference did not violate petitioner's right to due process. This case falls into the limited exception of the right of the defendant to hear and rebut peremptory challenges based on alleged racial discrimination which exists if disclosure of the reasons for excluding jurors would reveal the prosecution's case strategy and cause severe prejudice. *Alcantar,* 832 F.2d at 1180; *Thompson,* 827 F.2d at 1259.

### 4) Excluded Testimony of Defense Witness Sociologist

■ Petitioner next claims that the trial court's exclusion of expert testimony by Dr. Lionel Tiger on the topic of male group behavior violated her constitutional right to present a defense. She argues that Tiger's testimony would have corroborated the claim that she did not intend to kill her husband.

The correctness of state evidentiary rulings presenting only an issue of state law is not cognizable on federal habeas corpus review. *Estelle v. McGuire,* 502 U.S. 62, ——, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); *Gutierrez v. Griggs,* 695 F.2d 1195, 1197 (9th Cir.1983). Thus, the issue of Dr. Tiger's testimony is properly raised on habeas only if its exclusion rendered petitioner's state conviction a violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241 (1988); *Rose v. Hodges,* 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975) (per curiam).

The Due Process Clause of the Fourteenth Amendment guarantees criminal defendants a "meaningful opportunity to present a complete defense." *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986). Petitioner claims a violation of this right when the trial court excluded Dr. Tiger's testimony, therefore her state conviction is unconstitutional. While the due process clause "does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules," *Marshall v. Lonberger,* 459 U.S. 422, 438 n. 6, 103 S.Ct. 843, 853 n. 6, 74 L.Ed.2d 646 (1983), the Ninth Circuit considers five factors in determining whether exclusion of evidence violates due process: 1) the probative value of the excluded evidence on the central issue; 2) its reliability; 3) whether it is capable of evaluation by the trier of fact; 4) whether it is the sole evidence on the issue or merely cumulative; and 5) whether it constitutes a major part of the attempted defense. *Miller v. Stagner,* 757 F.2d 988, 994 (9th Cir.), *amended on other grounds,* 768 F.2d 1090 (9th Cir.1985), *cert. denied,* 475 U.S. 1048, 1049, 106 S.Ct. 1269, 1271, 89 L.Ed.2d 577, 579 (1986); *Tinsley v. Borg,* 895 F.2d 520, 530 (9th Cir.1990). The court must balance these factors with the substantial state interest in preserving orderly trials, judicial efficiency, and excluding unreliable or prejudicial evidence. *Stagner,* 757 F.2d at 988.

Based on these factors, this court finds that the exclusion of Dr. Tiger's testimony did not violate petitioner's due process right to present a defense. Dr. Tiger, a social anthropologist who had engaged in the study of male group behavior, proposed to testify that the group of marines petitioner recruited to kill her husband were self-activated by the need for group affiliation. In Tiger's opinion, their plans to murder Carlo Troiani were not the result of petitioner's inducement. [Cal.Ct.App. Op. at 87, 89]. Thus, Dr. Tiger's testimony may have been probative on the issue of petitioner's role in the conspiracy. It also may have been relevant to petitioner's claim that she desired to back out of the plan to kill her husband, that the young marines acted independently in carrying out the murder, and that she did not have the specific intent to commit murder at the time her husband was killed. These factors must be weighed, however, along with questions of reliability and cumulativeness, the substantial state interest in orderly and effi-

cient trials, and the broad discretion historically and properly granted to trial court judges on evidentiary issues. The California Court of Appeal found that Dr. Tiger's theories on male group syndrome may have been relevant. [Cal.Ct.App. Op. at 93]. However, it went on to find that the trial judge properly excluded Dr. Tiger's testimony because it was "nothing more than a personal theorem" which had not resulted from "a methodology which ha[d] achieved some scientific consensus of acceptability." *Id.* at 94. Under *Stagner*, this court finds Dr. Tiger's testimony minimally reliable and, at best, merely cumulative of other evidence offered by petitioner in regard to her asserted lack of mens rea. Therefore, the slight value of Tiger's testimony did not outweigh the state's interest in excluding evidence that would prolong the trial and confuse the issues. The trial court's ruling did not violate petitioner's due process rights.

### 5) Pretrial Publicity

#### A. Standard of Habeas Review

██ The trial court's denial of petitioner's motion for a change of venue does not, in itself, violate the Constitution. Rather, the trial judge's refusal to change venue rises to the level of a constitutional violation only if it resulted in prejudice so great as to deny petitioner her 5th Amendment right to fair trial.

On habeas review, this court must "make an independent review of the record to determine whether there was such a degree of prejudice against the petitioner that a fair trial was impossible." *Jeffries v. Blodgett,* 988 F.2d 923, 932 (9th Cir.1993). To do so, this court has independently examined the news reports, editorials, and publicity surrounding petitioner's trial for volume, content, and timing to determine if they were prejudicial. *Harris v. Pulley,* 885 F.2d 1354, 1360 (9th Cir.1988).

██ Whether the jury was biased is a question of fact and the state court's findings on this question are entitled to the § 2254(d) presumption of correctness. *Lincoln v. Sunn,* 807 F.2d 805, 814–15 (9th Cir.1987). On direct review, the Court of Appeal applied

settled principles to guide its review of whether there was a reasonable likelihood that petitioner could not obtain a fair trial in the North County judicial district where she was tried. *People v. Harris,* 28 Cal.3d 935, 948, 171 Cal.Rptr. 679, 623 P.2d 240 (1981). The court evaluated five indicia to determine whether such a reasonable likelihood existed: 1) the gravity and nature of the crime; 2) the extent and nature of the pretrial publicity; 3) the size and nature of the community; 4) the status of the victim and the accused; and 5) the presence of political overtones. [Cal.Ct. App. Op. at 18, *citing Williams v. Superior Court,* 34 Cal.3d 584, 588, 194 Cal.Rptr. 492, 668 P.2d 799 (1983)]. The Court of Appeal concluded, after a careful and case-specific factual analysis, that the trial court properly denied petitioner's motion for change of venue because all factors, other than the gravity of the offense, weighed against it. [Cal.Ct. App. Op. at 32].

██ The presumption that the state court's factual basis for upholding the denial of petitioner's motion for change of venue was correct does not apply if the habeas court concludes that those factual findings are not fairly supported by the record. *Sumner v. Mata,* 449 U.S. 539, 550, 101 S.Ct. 764, 770–71, 66 L.Ed.2d 722 (1982); 28 U.S.C. § 2254(d)(8) (1988). Where prejudicial pretrial publicity is alleged, the relevant parts of the state court record include, at minimum, copies of the newspaper articles, and if available, any transcripts of television and radio broadcasts. *Harris v. Pulley,* 692 F.2d 1189, 1200 (9th Cir.1982), *rev'd on other grounds,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984).

Because a federal district court sitting in habeas has a duty to "independently evaluate the voir dire testimony of the impaneled jurors," *Irvin v. Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751 (1961), this court examined the entire transcript of the voir dire testimony. It is only after examination of such relevant parts of the record that the district court can determine that the state court's findings are supported by the record. *Harris,* 692 F.2d at 1200; 28 U.S.C. § 2254(d)(8) (1988).

In order to make a careful and detailed review of all relevant portions of the trial court record necessary to make an independent judgment of possible prejudice to the petitioner resulting from pretrial publicity, this court requested that the Office of the Attorney General, in answer to petitioner's § 2254 petition, furnish: 1) the entire transcript of voir dire testimony, 2) exhibits introduced at the state court hearing on the motion for change of venue, 3) copies of newspaper articles, and 4) transcripts of television and radio broadcasts reporting petitioner's trial, insofar as they were available. This court reviewed numerous volumes of the trial court record to determine whether the state court's factual findings surrounding the denial of petitioner's motion for change of venue were fairly supported by the record, and thereby must be presumed correct.

Based on a complete and de novo review of petitioner's lengthy trial court transcript, motions and documentation filed in support of petitioner's pretrial proceedings, this court finds that the state court's factual findings relating to petitioner's motion for change of venue are adequately supported by the record, and therefore, must be presumed correct. 28 U.S.C. § 2254(d) (1988). This court further finds that the trial judge's denial of petitioner's motion for change of venue did not result in prejudice so great as to deny her due process right to a fair trial.

## B. Application of the Standard

■ Defendants enjoy the right to due process to be tried by "a panel of impartial, 'indifferent' jurors." *Irvin*, 366 U.S. at 723, 81 S.Ct. at 1643. If prejudicial pretrial publicity makes it impossible to seat an impartial jury, then the trial judge must grant the defendant's motion for change of venue. *Harris*, 885 F.2d at 1361. The prejudice requirement can be satisfied by a finding of: 1) presumed prejudice; or 2) actual prejudice.

### 1. Presumed Prejudice

■ "Prejudice is presumed when the record demonstrates that the community where the trial was held was saturated with prejudicial and inflammatory media publicity about the crime." *Id.* Courts rarely find presumed prejudice because "saturation" defines conditions found only in extreme situations. *Id.*

In *Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963), the Supreme Court found that the denial of a motion for change of venue violated due process when a confession made by the defendant was videotaped and broadcast three times by a local television station. Because three members of the jury who ultimately convicted the defendant had viewed the tape, the Court found the media publicity to be sufficiently extreme to invoke the presumed prejudice rule. Unless the publicity renders the trial a "hollow formality," *Id.* at 726, 83 S.Ct. at 1419, however, the presumed prejudice rule is rarely applicable. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 554, 96 S.Ct. 2791, 2800, 49 L.Ed.2d 683 (1976). It is the opinion of this court that petitioner's pretrial publicity did not render her trial a "hollow formality" and therefore, prejudice cannot be presumed.

### 2. Actual Prejudice

■ Actual prejudice exists if the jurors demonstrated actual partiality or hostility that cannot be laid aside. *Harris*, 885 F.2d at 1363. "Jurors need not, however, be totally ignorant of the facts and issues involved." *Murphy v. Florida*, 421 U.S. 794, 800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975).

■ Actual prejudice is not demonstrated by merely showing juror exposure to pretrial publicity. "The relevant question is not whether the community remembered the case, but whether the jurors ... had such fixed opinions that they could not judge impartially the guilt of the defendant." *Patton v. Yount*, 467 U.S. 1025, 1035, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847 (1984). The Supreme Court has held that a key factor in gauging the reliability of juror assurances of impartiality is the percentage of veniremen who "will admit to disqualifying prejudice." *Murphy*, 421 U.S. at 803, 95 S.Ct. at 2037. The higher percentage of veniremen admitting to a previously formed opinion on the case, the greater the concern over the reliability of the

voir dire responses from the remaining potential jurors. *Id.*

Petitioner claims that only one of the twelve jurors who sat on the case had not heard or read about her case. [Points & Authorities in Support of Habeas Petition, at 14]. It is immaterial, however, that almost all of the jurors had heard or read about the case prior to trial, since all jurors swore under oath that they could impartially judge petitioner's guilt or innocence. *Jeffries,* 988 F.2d at 932. Therefore, this court finds that petitioner cannot show actual prejudice, caused by extensive pretrial publicity, which resulted in violating her due process right to a fair trial.

### 6) Involuntariness of Confession

#### A. Standard of Review

■ Petitioner claims her confession was coerced by the police and should have been excluded from the trial. This court must review *de novo* whether the confession was voluntary by a preponderance of the evidence. *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 626–27, 30 L.Ed.2d 618 (1972); *United States v. Tingle,* 658 F.2d 1332, 1335 (9th Cir.1981). While the court does review the voluntariness of petitioner's confession *de novo,* the factual findings made by the state court in determining the voluntariness of the confession are presumed correct under 28 U.S.C. § 2254(d). *Miller v. Fenton,* 474 U.S. 104, 112, 106 S.Ct. 445, 450–51, 88 L.Ed.2d 405 (1985); *Knaubert v. Goldsmith,* 791 F.2d 722, 726–27 (9th Cir.1986). For example, underlying factual questions, such as "whether in fact the police engaged in the intimidation tactics alleged by the defendant … are entitled to the § 2254(d) presumption." *Miller* 474 U.S. at 112, 106 S.Ct. at 450; *Collazo v. Estelle,* 940 F.2d 411, 415 (9th Cir.1991) (en banc). Factual findings may sometimes be implied from the state trial court's ruling:

> when a state trial court holds a hearing on a motion to suppress evidence and rules on the motion, a federal district court may assume that the state court found the facts necessary to support the state court's decision, unless there is some indication that the state court applied an incorrect legal standard. *Knaubert v. Goldsmith,* 791 F.2d at 727, citing *Townsend v. Sain,* 372 U.S. 293, 314–15, 83 S.Ct. 745, 757–58, 9 L.Ed.2d 770 (1963).

Additionally, while voluntariness is reviewed *de novo,* this court must still give weight to the conclusions of its coequal branch in the state judiciary. *Miller,* 474 U.S. at 112, 106 S.Ct. at 450–51.

### B. Application of Standard

■ A confession obtained by police is involuntary, and therefore, a violation of due process, if the defendant's free will was overborne at the time she confessed. *Haynes v. Washington,* 373 U.S. 503, 513–14, 83 S.Ct. 1336, 1343, 10 L.Ed.2d 513 (1963); *Tingle,* 658 F.2d at 1335. It must appear that under the totality of the circumstances the confession was not obtained by coercion or improper inducement. *Haynes,* 373 U.S. at 514, 83 S.Ct. at 1343.

■ This court finds that petitioner's confession was voluntarily obtained. The "threats" made by police concerning the possibility of the death penalty and the chance that petitioner might have to "kiss her children goodbye" were probably improper; however, they do not rise to the level of psychological coercion necessary to render her confession involuntary under *Tingle.* The police officers did not "deliberately prey upon the maternal instinct and inculcate fear in a mother that she will not see her child in order to elicit 'cooperation.'" *Tingle,* 658 F.2d at 1336. The Court of Appeal found that the petitioner first raised the issue of her children during interrogation herself, and petitioner again brought them up later when she explained inconsistencies in her story by her desire to protect her children. [Cal.Ct. App. Op. at 55]. At that point, officers explained that petitioner was being charged with murder and that the children were being placed in protective custody. *Id.* Based on these underlying facts, this court finds that petitioner's will was not overborne and that the officers merely stated facts. They did not threaten petitioner, exploit her children; nor did they promise her confession of guilt would change anything. Therefore, this court finds that petitioner's due process

**1064**

rights were not violated when the trial court admitted her confession into evidence during trial.

## CONCLUSION

For the foregoing reasons, Laura Ann Troiani's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED.**

**IT IS SO ORDERED.**